# IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | | |
|---|---|---|
| LAURA HOFFMAN, et al., | ) | CASE NO.: 1:18-CV-00309 |
| | ) | |
| Plaintiffs, | ) | JUDGE: CHRISTOPHER A. BOYKO |
| | ) | |
| vs. | ) | **DEFENDANTS' JOINT** |
| | ) | **MEMORANDUM OF LAW** |
| MICHAEL C. O'MALLEY, et al., | ) | **IN SUPPORT OF THEIR MOTION** |
| | ) | **FOR SUMMARY JUDGMENT** |
| Defendants. | ) | **ON PLAINTIFFS' DEFAMATION** |
| | ) | **AND FALSE LIGHT CLAIMS** |
| | ) | |

Defendants Michael C. O'Malley, Gregory Mussman, Joanna Whinery, Jennifer Driscoll and Cuyahoga County, by and through counsel, hereby submit this memorandum of law in support of their motion for summary judgment on Plaintiffs' defamation and false light claims.

Respectfully submitted,

MICHAEL C. O'MALLEY, Prosecuting
Attorney of Cuyahoga County, Ohio

By:     /s/ David G. Lambert
        David G. Lambert (0030273)
        Nora E. Poore (0079609)
        Kenneth M. Rock (0096482)
        Assistant Prosecuting Attorneys
        1200 Ontario Street, 8th Floor
        Cleveland, Ohio  44113
        Tel: (216) 443-7829 Fax: (216) 443-7602
        dlambert@prosecutor.cuyahogacounty.us
        npoore@prosecutor.cuyahogacounty.us
        krock@prosecutor.cuyahogacounty.us

        *Attorneys for Defendants Michael C. O'Malley,*
        *Gregory Mussman, Joanna Whinery, Jennifer*
        *Driscoll, and Cuyahoga County*

## TABLE OF CONTENTS

**Page**

**TABLE OF AUTHORITIES** ...................................................................… iv

**SUMMARY OF THE ARGUMENT PRESENTED** ...............................… 1

**STATEMENT OF THE ISSUES TO BE DECIDED** ............................… 1

**FACTUAL BACKGROUND** ..................................................................… 2

**A. The O'Malley Administration Learns of Uncharged Juvenile Sexual Assault Cases** ……………………………………………………..…… 2

**B. The O'Malley Administration Investigates the Uncharged Sexual Assault Cases** ……………………………………………………………. 3

**C. The Media Reports on the Investigation and the Employee Discipline** ……………………………………………………..…………. 5

**D. The Allegedly Defamatory Statements**……..…………………………. 5

**LAW AND ARGUMENT**..................................................................… 6

**I.    STANDARD FOR SUMMARY JUDGMENT** …………………………….. 6

**LEGAL STANDARD FOR DEFAMATION** …………….…………………….. 7

**II.   MANY OF THE CHALLENGED STATEMENTS ARE PROTECTED STATEMENTS OF OPINION.**………………………………………..……… 7

**III. UNDER BOTH OHIO LAW AND THE FIRST AMENDMENT TO THE UNITED STATES CONSTITUTION, PLAINTIFFS CANNOT PROVE THE FALSITY ELEMENT OF ANY OF THE CHALLENGED STATEMENTS** ..............................................................................… 10

**A. However They Are Construed, Defendants' Statements Are At Least Substantially True.**...........................................................................… 12

**1. The *Cleveland.com* Article's "Bulk of the cases" phrase is not false.**...............… 12

**B. Plaintiffs Cannot Prove Defamation for Statements About Their Handling of Cases.**................................................................................… 14

**IV. PLAINTIFFS CANNOT PROVE ACTUAL MALICE OR EVEN NEGLIGENCE FOR ANY OF THE CHALLENGED STATEMENTS.**…….  17

**A. Plaintiffs are Public Officials and Thus Must Prove Actual Malice** …………  17

**B**. **Defendants' Qualified Privilege Requires Plaintiffs to Prove Actual Malice**…  18

**C. The Standard for Proving Actual Malice is Exceptionally Demanding**………  19

**D. Plaintiffs Cannot Prove Actual Malice for Any of the Challenged Statements**..  20

**E. Even Without an Actual Malice Requirement, Plaintiffs Must Prove Negligence by Clear and Convincing Evidence.**…………………………….…  21

**V. PLAINTIFFS CANNOT SHOW THAT MANY OF THE CHALLENGED STATEMENTS ARE "OF AND CONCERNING" THEM.**……………....…  22

**VI. PLAINTIFFS' FALSE LIGHT CLAIMS FAIL AS A MATTER OF LAW.**…  22

**VII.  THE INDIVIDUAL DEFENDANTS ARE ENTITLED TO STATUTORY IMMUNITY UNDER OHIO R.C. 2744.03** .………..................................……  23

**VIII. BECAUSE PLAINTIFFS CANNOT MAKE OUT DEFAMATION OR FALSE LIGHT CLAIMS AGAINST ANY OF THE INDIVIDUAL DEFENDANTS THE CLAIMS AGAINST CUYAHOGA COUNTY MUST BE DISMISSED**……. ......................................................………  25

**CONCLUSION** ................................................................................………  25

**CERTIFICATION OF COMPLIANCE WITH LOCAL RULE 7.1(f)** ...............………  26

**CERTIFICATE OF SERVICE** ...................................................................………  26

# **TABLE OF AUTHORITIES**

**Page**

## **CASES:**

*Bose Corp. v. Consumers Union of U.S., Inc.*, 466 U.S. 485 (1984)..........................  10

*Byrne v. Univ. Hosps.*, 8th Dist. Cuyahoga No. 95971, 2011-Ohio-4110................  8

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) .............................................................  7

*Christian v. Beacon Journal Publishing Co.,* 9th Dist. No. 12368,
1986 Ohio App. LEXIS 7155 (June 11, 1986) .............................................................  19

*Conley v. Shearer*, 64 Ohio St.3d 284, 1992-Ohio-133, 595 N.E.2d 862) ...............  24

*Crane v. Arizona Republic*, 972 F.2d 1511 (9th Cir. 1992)......................................  18

*Croce v. N.Y. Times Co.*, 345 F. Supp. 3d 961 (S.D. Ohio 2018)............................  23

*Dale v. Ohio Civil Serv. Employees Ass'n*,
57 Ohio St. 3d 112, 567 N.E.2d 253 (1991) ................................................................  10

*Dupler v. Mansfield Journal Co.*, 64 Ohio St. 2d 116, 413 N.E.2d 1187 (1980)......  19, 20

*England v. Auto. Canteen Co.*, 349 F.2d 989 (6th Cir. 1965)………………….……..  11

*Great Lakes Capital, Ltd. v. Plain Dealer Publ'g. Co.*,
8th Dist. No. 91215, 2008-Ohio-6495 .........................................................................  22

*Hahn v. Kotten*, 43 Ohio St. 2d 237, 331 N.E.2d 713 (1975)...................................  18

*Hoffman v. O'Malley*, No. 1:18CV309,
2019 U.S. Dist. LEXIS 20935 (N.D. Ohio Feb. 8, 2019).........................................  7

*Holley v. WBNS 10TV, Inc.*, 149 Ohio App. 3d 22,
2002-Ohio-4315, 775 N.E.2d 579 (10th Dist. 2002)) ...............................................  11

*Johnson v. Trumbull County Children Servs. Bd.*,
11th Dist. No. 2000-T-0014, 2000 Ohio App. LEXIS 5927 (2000).........................  21

*Lansdowne v. Beacon Journal Pub. Co.*,
32 Ohio St. 3d 176, 512 N.E.2d 979 (1987) .............................................................  21

# TABLE OF AUTHORITIES (Cont'd)

**Page**

**CASES:**

*Lee v. City & County of San Francisco*, No. 98-16487,
1999 U.S. App. LEXIS 30619 (9th Cir. Nov. 23, 1999) ........................................... 18

*Lennon v. Cuyahoga County Juvenile Court*,
8th Dist. No. 86651, 2006-Ohio-2587 ...................................................................... 7

*List v. Driehaus,* 779 F.3d 628 (6th Cir.2015)......................................................... 7, 11,
................................................................................................................................... 14, 19,
................................................................................................................................... 20

*Masson v. New Yorker Magazine, Inc.*, 501 U.S. 496 (1991).................................... 11-12

*McKimm v. Ohio Elections Comm'n*,
89 Ohio St. 3d 139, 729 N.E.2d 364 (2000) ............................................................. 20

*Michigan United Conservation Clubs v. CBS News, Div.*,
665 F.2d 110 (6th Cir. 1981) ..................................................................................... 22

*Moore v. City of Cleveland*, 8th Dist. No. 104466, 2017-Ohio-1156........................ 24

*Murray v. Bailey*, 613 F. Supp. 1276 (N.D. Cal. 1985)............................................ 18

*Nat'l Medic Servs. Corp. v. E.W. Scripps Co.*,
61 Ohio App.3d 752, 573 N.E.2d 1148 (1st Dist.1989) ............................................ 11

*New York Times Co. v. Sullivan*, 376 U.S. 254 (1964)............................................. 22

*Office of Disciplinary Counsel v. Gardner*,
99 Ohio St. 3d 416, 2003-Ohio-4048, 793 N.E.2d 425 ............................................ 7

*Ollman v. Evans*, 750 F.2d 970 (D.C. Cir. 1984) ..................................................... 8, 9

*Orr v. Argus-Press Co.*, 586 F.2d 1108 (6th Cir. 1978) ........................................... 10-11

*Phila. Newspapers v. Hepps*, 475 U.S. 767 (1986).................................................. 10

*Phillips v. Ingham Cty.*, 371 F.Supp.2d 918 (W.D. Mich. 2005) ............................. 17-18

*Rosenblatt* v. *Baer*, 383 U.S. 75 (1966).................................................................... 17

*Schuster v. U. S. News & World Report, Inc.*, 602 F.2d 850 (8th Cir. 1979) ............ 22

## TABLE OF AUTHORITIES (Cont'd)

**Page**

**CASES:**

*Scott v. The News-Herald*, 25 Ohio St.3d 243, 496 N.E.2d 699 (1986) ................... 8

*SEIU Dist. 1199 v. Ohio Elections Comm'n*, 158 Ohio App.3d 769,
2004-Ohio-5662, 822 N.E.2d 424 (10th Dist. 2004) ................................. 11, 14,
.............................................................................................................. 20

*Smith v. Lebanon City Schs.*, 12th Dist. No. CA99-02-024,
1999 Ohio App. LEXIS 5241 ....................................................................... 19

*Soke v. The Plain Dealer*, 69 Ohio St. 3d 395, 632 N.E.2d 1282 (1994) ................. 18

*St. Amant v. Thompson*, 390 U.S. 727 (1968) ............................................................ 20

*Time, Inc. v. Pape*, 401 U.S. 279 (1971) .................................................................... 10

*Vail v. Plain Dealer Publ'g Co.*, 72 Ohio St. 3d 279, 649 N.E.2d 182 (1995) ......... 8

*Wampler v. Higgins*, 93 Ohio St.3d 111,
2001-Ohio-1293, 752 N.E.2d 962 (2001) ................................................... 7, 8, 9

*Welling v. Weinfeld*, 113 Ohio St.3d 464, 2007-Ohio-2451, 866 N.E.2d 1051 ........ 22, 23

*Wrenn v. Ohio Dept. of Mental Health & Mental Retardation*,
16 Ohio App.3d 160, 474 N.E.2d 1201 (10th Dist.1984) ........................................ 19

*Yeager v. Local Union 20, Teamsters, Chauffeurs, Warehousemen &
Helpers of Am.*, 6 Ohio St. 3d 369, 453 N.E.2d 666 (1983) ..................................... 11

**STATUTES, RULES AND OTHER AUTHORITY:**

R.C. 2744.03    ................................................................................................. 23, 24

Fed. R. Civ. P. 56(c) .............................................................................................. 7

Prosser, Law of Torts (4 Ed.) 789 ........................................................................ 18

Restatement (Second) of Torts section 564 (1977) .................................................. 22

## MEMORANDUM OF LAW

Defendants Michael C. O'Malley, Gregory Mussman, Joanna Whinery, Jennifer Driscoll and Cuyahoga County, by and through the undersigned counsel, hereby submit this memorandum of law in support of their motion for summary judgment on Plaintiff Laura Hoffman and Linda Herman's defamation and false light claims.

## SUMMARY OF THE ARGUMENT PRESENTED

Summary judgment is warranted on Plaintiffs' defamation claims because they cannot prove that the challenged statements are false.  Additionally, because Plaintiffs are public officials and Defendants enjoy a qualified privilege, Plaintiffs must prove actual malice to succeed on either claim.  This they cannot do.  Here, the Defendants are clothed with qualified immunity and Plaintiffs cannot overcome the undisputed fact that Defendants conducted an extensive month-long investigation before making any of the challenged statements.  Further, as explained herein, the vast majority of the challenged statements are protected statements of opinion.  Moreover, Plaintiffs' false light claim must also be dismissed for the same reasons because it is co-extensive with the defamation claims.  Finally, the individual defendants are entitled to statutory immunity from liability for Plaintiffs' defamation and false light claims.

## STATEMENT OF THE ISSUES TO BE DECIDED

The issues to be decided in this motion for summary judgment are as follows:

- Can Plaintiffs establish that any of the challenged statements are false?

- Do Defendants enjoy qualified and as a result must Plaintiffs prove actual malice?

- If Plaintiffs must prove actual malice, do they have sufficient evidence to prove actual malice by clear and convincing evidence?

- If Plaintiffs do not need to prove actual malice, can they prove negligence as to falsity by clear and convincing evidence?

- Are certain of the statements alleged to be defamatory protected statements of opinion?

- Are the challenged statements "of and concerning" the Plaintiffs?

- Can Plaintiffs prevail on their false light claims (even if their defamation claims fail)?

- Are the individual defendants entitled to statutory immunity from liability for the defamation and false light claims?

**FACTUAL BACKGROUND**

The facts critical to this motion for summary judgment are undisputed.

**A.  The O'Malley Administration Learns of Uncharged Juvenile Sexual Assault Cases**

In January 2017 Defendant Michael O'Malley became the new elected Cuyahoga County Prosecutor, thereby placing him in charge of the Cuyahoga County Prosecutor's Office ("CCPO"). (Ex. F, O'Malley Depo. Tr. p. 26.)  O'Malley immediately put in place his management team.  He installed Defendant Gregory Mussman as the new Chief of CCPO's Juvenile Justice Unit (the "JJU"), and Defendant Joanna Whinery as the new managing attorney of the JJU.   (Ex. G, Mussman Depo. Tr. p. 10; Ex. H, Whinery Depo. Tr. p. 8.)  The JJU was composed of assistant prosecuting attorneys ("APAs") who performed the duties of (1) charging juvenile cases, and (2) prosecuting such cases in juvenile court.  (Ex. A, Hoffman Depo. Tr. pp. 23, 34.)  Very shortly after  O'Malley  took  office  in  2017 a representative  of  the  Cleveland  Rape  Crisis  Center approached Whinery and expressed concern that a substantial number of juvenile sexual assault cases had "fallen through the cracks."  (Ex. E, Miday Depo. Tr. p. 37; Ex. F, O'Malley Depo. Tr. p. 97; Cory Shaffer, *Prosecutors uncover dozens of uncharged juvenile cases, including rape*, *Cleveland.com*, February 13, 2017 (the "*Cleveland.com* Article"), a copy of which is attached hereto as Exhibit O.)  Around the same time CCPO also received an inquiry from a local police officer about the progress of the charging of an alleged sexual assault of a Cleveland Heights High School student by four of her classmates that remained uncharged.  (Ex. C, Williamson Depo. Tr.

p. 26.)  Also, around this time media outlets began to call the CCPO about uncharged sexual assault cases, including the Cleveland Heights High School case. (Ex. F, O'Malley Depo. Tr. pp. 97-98; Ex. E, Miday Depo. Tr. p. 17.)  These various inquiries caused CCPO to begin investigating the issue of uncharged juvenile sexual assault cases in the JJU.  (Ex. F, O'Malley Depo. Tr. p. 97; Ex. E, Miday Depo. Tr. p. 17.)

**B.  The O'Malley Administration Investigates the Uncharged Sexual Assault Cases**

As part of that effort, beginning on January 13, 2017, Whinery sent a series of emails to the APAs in the JJU, including both Plaintiffs, asking for a list of all current juvenile sexual assault cases assigned to each APA. (Ex. H, Whinery Depo. Tr. pp. 11-12.)  Whinery also sent emails to that effect on January 17 and 18. (Ex. A, Hoffman Depo. Tr. p. 157; Ex. B, Herman Depo. Tr. p. 41.) Hoffman replied to Whinery on January 17, 2017. (Ex. A, Hoffman Depo. Tr. pp. 148-49.) In that email Hoffman disclosed two uncharged sexual assault cases, those of B. J. and A. N.  (Id.) Hoffman failed to disclose the cases of D. W. and N. H., which were both uncharged sexual assault cases that had been neglected for over two years.  (Id. at p. 149.)

On January 25, 2017 Mussman convened an all-staff meeting of the JJU, a meeting attended by all juvenile prosecutors, including Plaintiffs, at which he directed all APAs go back to their desks and look for any uncharged sexual assault cases.  (Ex. A, Hoffman Depo. Tr. p. 156; Ex. B, Herman Depo. Tr. pp. 37-38.)  After that meeting Plaintiff Hoffman went back to her desk and found two more uncharged cases, N.H. and D.L., that she brought to Mussman's attention. (Ex. A, Hoffman Depo. Tr. p. 155.) Two days later, on January 27, Plaintiff Herman came forward to reveal to Mussman that she had four uncharged sexual assault cases, all of which had been in her possession for more than one year.  (Ex. B, Herman Depo. Tr. pp. 40, 74-75.)

3

On February 1, 2017 several APAs in the JJU, including both Plaintiffs, had meetings with Williamson, Mussman, and Whinery, in which they discussed their handling of the sexual assault cases. (Ex. A, Hoffman Depo. Tr. pp. 177-180; Ex. B, Herman Depo. Tr. pp. 108-109.)  Herman and Hoffman were asked about specific cases and were given the opportunity to explain their conduct.  (Laura Hoffman EEOC Complaint, attached hereto as <u>Exhibit L</u> ("Hoffman EEOC Compl."), at CCPO-0672; Linda Herman EEOC Complaint, attached hereto as <u>Exhibit M</u> ("Herman EEOC Compl."), at CCPO-0611.)

Then on February 7, 2017, both Plaintiffs were accorded predisciplinary conferences where they had the opportunity to offer an explanation of their handling of the neglected sexual assault cases.  (Ex. A, Hoffman Depo. Tr. pp. 183-188; Ex. B, Herman Depo. Tr. pp. 119-120.)  In addition, the other APAs involved in the uncharged sexual assault cases, Robin Belcher, Lakeesha Johnson, Ralph Kolasinski, Kristen Hatcher, and Chad Cleveland, were investigated by the office and disciplined.  (Ex. C, Williamson Depo. Tr. pp. 135-43.)

After the predisciplinary hearings senior CCPO staff, including Williamson, Mussman, the HR Director, and others, met and they reviewed the materials they had, discussed the conversations they had with the individual APAs, and discussed what discipline should be recommended for the APAs involved, including Plaintiffs.  (Ex. C, Williamson Depo. Tr. pp. 19, 23.)

Finally, Williamson met with Prosecutor O'Malley on February 7 to present the recommendations regarding punishment.  (Ex. C, Williamson Depo. Tr. p. 23.)  Prosecutor O'Malley determined that Belcher, Hoffman, and Herman should be offered the option to be terminated or resign.  (Ex. C, Williamson Depo. Tr. p. 24.)  Belcher, Hoffman, and Herman all offered their resignations shortly thereafter.  (Compl., Doc. #1, ¶¶ 97, 107; Ex. J, Belcher Depo. Tr. p. 9.)

**C.  The Media Reports on the Investigation and the Employee Discipline**

Because CCPO had received media inquiries about uncharged sexual assault cases, Ryan Miday, CCPO's Director of Communications Policy, recommended to Prosecutor O'Malley that the office communicate with the media about the issue.  (Ex. E, Miday Depo. Tr. pp. 16-19.) On Monday February 13, 2017 Cory Shaffer, a reporter for *Cleveland.com*, came to CCPO's offices and met with Prosecutor O'Malley, Williamson, Mussman, Whinery, Driscoll, Russ Tye, and Diane Russell to discuss the mishandled juvenile sexual assault cases.  (Amended Declaration of Cory Shaffer ("Am. Shaffer Decl."), a copy of which is attached here to as <u>Exhibit N</u>, ¶ 6; Ex. E, Miday Depo. Tr. p. 36.)  Peggy Gallek, a television reporter with Fox 8, also participated in the same interview.  (Ex. E, Miday Depo. Tr. pp. 27, 29, 31)   Although the Plaintiffs were not identified by name in the February 13 meeting with Shaffer and Gallek, (Ex. F, O'Malley Depo. Tr. p. 82), Shaffer also made a public records request for the disciplinary records for the APAs involved and learned Plaintiffs' names from the records produced in response to his request.  (Ex. N, Am. Shaffer Decl. ¶ 8.)  Shaffer's article regarding the investigation into the uncharged juvenile sexual assault cases and resulting discipline was published on *Cleveland.com* on February 13, 2017.  (Ex. N., Am. Shaffer Decl. ¶ 2; Ex. F, *Cleveland.com* Article.)

Prosecutor O'Malley and/or the CCPO staff also gave interviews to several other outlets on the issue, including Fox 8, the Associated Press, News 5, and WCPN Ideastream.  (Ex. E, Miday Depo. Tr. pp. 29, 30-33.).

**D.  The Allegedly Defamatory Statements**

As part of the written discovery in this case Defendants asked Plaintiffs to identify which statements they believe to be defamatory.  In response Plaintiffs identified specific allegedly defamatory statements contained in five media reports:

5

- February 13, 2017 article on *Cleveland.com* titled *Prosecutors uncover dozens of uncharged juvenile cases, including rape* (previously abbreviated herein as the "*Cleveland.com* Article") (a copy of which is attached hereto as <u>Exhibit O</u>)

- February 14, 2017 story on Fox 8 Cleveland (referred to herein as the "<u>Fox 8 Report</u>") (a copy of which is attached hereto as <u>Exhibit P</u>)[1]

- February 14, 2017 story on News 5 Cleveland (referred to herein as the "<u>News 5 Report</u>") (a copy of which is attached hereto as <u>Exhibit Q</u>)[2]

- February 14, 2017 story in The Morning Journal, titled *Cuyahoga County prosecutor: Dozens of child sex assault cases were 'ignored'* (referred to herein as the "<u>Morning Journal Article</u>") (a copy of which is attached hereto as <u>Exhibit R</u>)

- March 7, 2017 story on WCPN Ideastream (referred to herein as the "<u>Ideastream Story</u>") (a copy of which is attached hereto as <u>Exhibit S</u>)

Excerpts of Plaintiffs' interrogatory responses identifying the allegedly defamatory statements contained in each article are attached hereto as <u>Exhibit T</u>.  Both Plaintiffs identify the same statements as being allegedly defamatory with regards to each Defendant.  The statements alleged to be defamatory in the Fox 8 Report, News 5 Report, Morning Journal Article, and Ideastream Story are identical for each defendant.  The only variance is that Plaintiffs charge Defendants Mussman, Whinery and Driscoll with certain defamatory statements from the *Cleveland.com* Article that are not attributed to Defendants O'Malley and Williamson.

## LAW AND ARGUMENT

### I.  STANDARD FOR SUMMARY JUDGMENT

The United States Supreme Court has held that a motion for summary judgment is most appropriately made by a defendant when it can be shown that a plaintiff cannot make out an element of a cause of action:

---

[1] The Fox 8 Report contains some video content.  Defendants manually filed a disc with their Answer, Doc. #4, which contains the video content to the Fox 8 Report.

[2] The News 5 Report contains some video content.  Defendants manually filed a disc with their Answer, Doc. #4, which contains the video content to the News 5 Report.

the plain language of Rule 56(c) mandates the entry of summary judgment . . .
against a party who fails to make a showing sufficient to establish the existence of
an element essential to that party's case, and on which that party will bear the
burden of proof at trial.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

## LEGAL STANDARD FOR DEFAMATION

The fundamental elements of a defamation claim require a plaintiff to show: "'(1) that a
false statement of fact was made, (2) that the statement was defamatory, (3) that the statement was
published, (4) that the plaintiff suffered injury as a proximate result of the publication, and (5) that
the defendant acted with the requisite degree of fault in publishing the statement.'"  *Hoffman v.
O'Malley*, No. 1:18CV309, 2019 U.S. Dist. LEXIS 20935, at *7-8 (N.D. Ohio Feb. 8, 2019)
(quoting *List v. Driehaus,* 779 F.3d 628, 632-33 (6th Cir.2015)).

## II.  MANY OF THE CHALLENGED STATEMENTS ARE PROTECTED STATEMENTS OF OPINION

The first question the Court must consider is whether "the defendant has asserted a false
statement of fact, rather than just an opinion" *Lennon v. Cuyahoga County Juvenile Court*, 8th
Dist. Cuyahoga No. 86651, 2006-Ohio-2587, ¶ 29 (citation and quotation omitted)).  "[T]he Ohio
Constitution goes beyond the federal Constitution in that certain false statements of opinion are
protected." *Office of Disciplinary Counsel v. Gardner*, 99 Ohio St. 3d 416, 2003-Ohio-4048, 793
N.E.2d 425, ¶ 19.   The determination of whether a statement is one of opinion or fact is a legal
question for the Court.  *Wampler v. Higgins*, 93 Ohio St.3d 111, 127, 2001-Ohio-1293, 752 N.E.2d
962 (2001).  In determining whether a statement is one of opinion or fact, Ohio courts consider the
following four factors:  "First is the specific language used, second is whether the statement is
verifiable, third is the general context of the statement, and fourth is the broader context in which

the statement appeared." *Scott v. The News-Herald*, 25 Ohio St.3d 243, 250, 496 N.E.2d 699 (1986).

Under the first factor of the test for opinion, the specific language of the statement, courts must analyze the common usage of the defamatory words and determine whether they have a precise meaning leading to clear factual implications. *See Wampler*, 93 Ohio St.3d at 127.  "Vague statements subject to varying interpretations weigh in favor of being considered non-actionable opinions."  *Byrne v. Univ. Hosps.*, 8th Dist. Cuyahoga No. 95971, 2011-Ohio-4110, ¶¶ 14-15. Statements that are pejorative in tone, but also "loosely definable," "variously interpretable," "indefinite," and "ambiguous," that are "inherently imprecise and subject to myriad subjective interpretations," weigh against actionability.  *Wampler*, 93 Ohio St. 3d at 128-29 (quotations and citations omitted).

The second factor, the verifiability of the statement, tests whether the statement is "objectively capable of proof or disproof." *Wampler*, 93 Ohio St.3d at 129.  Ohio courts "seek to determine whether the allegedly defamatory statements are objectively capable of proof or disproof, for a reader cannot rationally view an unverifiable statement as conveying actual facts." *Wampler*, 93 Ohio St. 3d at 129 (quoting *Ollman v. Evans*, 750 F.2d 970, 981 (D.C. Cir. 1984)).

Under the third factor courts look at the immediate context in which the statement appears. *Byrne*, 2011-Ohio-4110 at ¶ 22.  Under the fourth factor, the Court considers the broader social context into which the challenged statement fits.  *Wampler*, 93 Ohio St. 3d at 131.

"Each of the four factors should be addressed, but the weight given to any one will conceivably vary depending on the circumstances presented."  *Vail v. Plain Dealer Publ'g Co.*, 72 Ohio St. 3d 279, 282, 649 N.E.2d 182 (1995).

Applying the four-factor test to the facts of this case reveals that the following allegedly defamatory statements are protected statements of opinion:

- "Records cite incompetency, inefficiency and neglect of duty as reasons for the reprimands." (Ex. O, *Cleveland.com* Article)

- "A complete failure to the victims of these horrific crimes"; "complete failure of their obligations"  (Ex. P, Fox 8 Report)

- "All cases need to be resolved one way or another. And placing them on such a thing as an inactive list, where it ends up that employees just do nothing with the case, is never an acceptable resolution." (Ex. S, Ideastream Story)

Applying the first factor, the language of these statements, though it may be pejorative, weighs strongly against actionability because terms like "incompetency," "inefficiency," "failure of their obligations," and "never an acceptable resolution" are the sorts of loosely definable, variously interpretable, indefinite, and ambiguous, terms that are "inherently imprecise and subject to myriad subjective interpretations." *Wampler*, 93 Ohio St. 3d at 128-29.

The second factor weighs very strongly against finding the statements actionable because none of these statements can be objectively proven or disproven, which is the hallmark of a statement of opinion.  The Court should give a great deal of weight to this factor because "'[a]n obvious potential for quashing or muting First Amendment activity looms large when juries attempt to assess the truth of a statement that admits of no method of verification.'"  *Wampler*, 93 Ohio St. 3d at 129 (quoting *Ollman* at 981-82).

The third and fourth factors also weighs in favor of finding the statements to be opinions, because the media reports are authored in a way that the Defendants' statements are presented as their justifications for having disciplined certain employees.  The audience understands that an employer's reasons for disciplining an employee can arise from the employer's opinion of the employee's performance.  Thus the audience understands that what the statements present is the

9

employer's opinion of why the employees needed to be disciplined.  This makes it clear to the audience that these statements are CCPO's opinion of what happened.

Because the text of the challenged statements is so clearly the kind of language used when expressing an opinion, and the statements cannot be objectively proven or disproven, and the context of the statements makes clear that they are statements of opinion, these statements are not actionable.

## III. UNDER BOTH OHIO LAW AND THE FIRST AMENDMENT TO THE UNITED STATES CONSTITUTION, PLAINTIFFS CANNOT PROVE THE FALSITY ELEMENT OF ANY OF THE CHALLENGED STATEMENTS

It is fundamental Ohio law that a "plaintiff in a defamation case … has the burden of proving … that the statement was false." *Dale v. Ohio Civil Serv. Employees Ass'n*, 57 Ohio St. 3d 112, 114, 567 N.E.2d 253 (1991). Courts have recognized that proving falsity, for purposes of defamation, is no easy task. Courts have developed a series of doctrines that impose a stringent standard of proof on the plaintiff and, as a result, "insulate from liability some speech that is false." *Phila. Newspapers v. Hepps*, 475 U.S. 767, 778 (1986). These doctrines require dismissal of Plaintiffs' claims.

*First*, under the First Amendment, a statement is not false or actionable if it "amount[s] to the adoption of one of a number of possible rational interpretations of a document that bristled with ambiguities." *Time, Inc. v. Pape*, 401 U.S. 279, 290 (1971). Where the underlying sources or events "speak for themselves," falsehoods of historic fact can support a claim for defamation. *Id.* at 285. But mere "errors of interpretation or judgment" are not actionable, even if they "arguably reflec[t] a misconception." *Id.* at 290; *see also Bose Corp. v. Consumers Union of U.S., Inc.*, 466 U.S. 485, 513 (1984) (applying same analysis to ambiguous "event"); *Orr v. Argus-Press Co.*, 586

10

F.2d 1108, 1116 (6th Cir. 1978). In short, courts cannot deem "false" a speaker's rational description of a complex document or event that does not speak for itself.

*Second*, a statement is not "false" so long as it is true under any reasonable construction. In Ohio, this is known as the innocent construction doctrine: "[I]f allegedly defamatory words are susceptible to two meanings, one defamatory and one innocent, the defamatory meaning should be rejected, and the innocent meaning adopted." *Yeager v. Local Union 20, Teamsters, Chauffeurs, Warehousemen & Helpers of Am.*, 6 Ohio St. 3d 369, 372, 453 N.E.2d 666 (1983); *see also England v. Auto. Canteen Co.*, 349 F.2d 989, 991 (6th Cir. 1965) ("[T]he language used must receive an innocent construction when susceptible of such interpretation …."). As such, if a statement "has an alternative meaning that renders defendant's [statement] true and, thus, not defamatory, plaintiff's cause of action must fail." *Holley v. WBNS 10TV, Inc.*, 149 Ohio App. 3d 22, 2002-Ohio-4315, 775 N.E.2d 579, ¶ 33 (10th Dist. 2002). Put another way, "a statement that is subject to different interpretations is not 'false.'" *SEIU Dist. 1199 v. Ohio Elections Comm'n*, 158 Ohio App.3d 769, 2004-Ohio-5662, 822 N.E.2d 424, ¶ 18 (10th Dist. 2004).

*Third*, a statement is not actionable simply for being misleading.  "'A statement is not a 'false statement' if, even though it is misleading and fails to disclose all relevant facts, the statement has some truth in it.'" *List*, 779 F.3d at 633 (quoting *SEIU Dist. 1199*, 158 Ohio App. 3d 769, 2004 Ohio 5662, 822 N.E.2d 424, ¶ 18).

*Fourth*, an action for defamation does not lie against a statement that is, in fact, false unless plaintiff proves that the statement is not even "substantially true." *Nat'l Medic Servs. Corp. v. E.W. Scripps Co.*, 61 Ohio App.3d 752, 755, 573 N.E.2d 1148 (1st Dist.1989). "Minor inaccuracies do not amount to falsity so long as the substance, the gist, the sting, of the libelous charge be justified." *Masson v. New Yorker Magazine, Inc.*, 501 U.S. 496, 516-18 (1991) (internal quotation marks and

11

citation omitted). "Put another way, the statement is not considered false unless it would have a different effect on the mind of the reader from that which the pleaded truth would have produced." *Id.* at 517 (quotation and citation omitted).

In sum, Ohio law and the First Amendment impose a demanding burden on the falsity element that Plaintiffs cannot meet for <u>any</u> of the challenged statements.

### A. However They Are Construed, Defendants' Statements Are At Least Substantially True

In their interrogatory responses Plaintiffs give a laundry list of allegedly defamatory statements.  Most of them are so obviously true from a review of the undisputed evidence that it is unclear why Plaintiffs have identified them as defamatory.  There is nothing in the record with which Plaintiffs can dispute that, for example, they were forced to resign (*see* Ex. A, Hoffman Depo. Tr. p. 247; Ex. B, Herman Depo. Tr. p. 141;), or that more than 1,900 juvenile cases were marked as inactive in the office's case management software, (Ex. F, O'Malley Depo. Tr. p. 71).

#### 1. The *Cleveland.com* Article's "Bulk of the cases" phrase is not false

Plaintiffs have focused most of their attention on one particular statement from the *Cleveland.com* Article written by reporter Cory Shaffer. Quite oddly, Plaintiffs seem to proceed on the premise that the Defendants (all county prosecutors) **wrote the articles in question** that contain the allegedly defamatory statements. This is absurd. These defendants are simply not responsible for a reporter's own utterances. Corey Shaffer wrote this article in question, and only a small percentage of the statements therein are attributed to one or more of the defendants.

A perfect example of this is the statement that Plaintiffs have fixated upon in the article: "O'Malley last week asked three assistant prosecutors who handled the bulk of the delayed cases to resign."  (Ex. O, *Cleveland.com* Article.)  This statement was, of course, written by Shaffer and published by *Cleveland.com*, who Plaintiffs have chosen not to sue.  Shaffer does not attribute that

statement to anyone: it is not a quote, nor is it preceded or followed by "so-and-so stated." It is Shaffer's statement, published by him.

Regardless of who made this challenged statement, it is true. Plaintiffs cannot prove Shaffer's "bulk of the cases" statement to be false because the statement says that Prosecutor O'Malley "asked <u>three</u> assistant prosecutors who handled the bulk of the delayed cases . . ." Plaintiffs have tried mightily throughout this case to effectively re-write Shaffer's statement, changing it from "three assistant prosecutors who handled the bulk of the cases" to "two assistant prosecutors who handled the bulk of the cases," thereby rendering it, in their account, false. Regardless of whether Plaintiffs only handled seven (7) of the seventy-six (76) delayed cases, Shaffer's statement references "three assistant prosecutors" and Plaintiffs are only two of the three APAs referred to.   The third assistant prosecutor referred to in that sentence is Robin Belcher, who was Plaintiffs' supervisor at the relevant time.  (Ex. A, Hoffman Depo. Tr. p. 23; Ex. B, Herman Depo. Tr. p. 18; Ex. J, Belcher Depo. Tr. p. 114.)  It is undisputed that Ms. Belcher, as the supervisor, had ultimate responsibility, and decision-making authority, for all the cases handled by the APAs working for her in the unit:

> [Defense Counsel] Q. Okay. Now -- and you would have to approve any charge on a sexual assault case, wouldn't you?
> . . .
>
> [Belcher] A. Myself or any of the other supervisors, so it's not just me.
> . . .
>
> Q. But you were the one that handled the bulk of the cases, correct?
>
> A. For the majority of the cases that came into Intake, unless they were Gang Unit, or I was not there, or they came in and it was going into the Detention Center, it could have been any of the supervisors that were there.
>
> Q. **Okay. But, you would have handled most of the cases, the sexual assault charging cases, you would have handled those?**

13

A. **They would come to me, yes**.

(Ex. J, Belcher Depo. Tr. pp. 120-121; *see also* Belcher Depo. Tr. pp. 130-32.) (emphasis added.)

Thus, when the cases handled by all three individuals (including Belcher) are added together, the total number clearly makes up the "bulk of the delayed cases." That fact renders Shaffer's statement true, and no amount of verbal obfuscation by Plaintiffs can change that undisputed fact.

Plaintiffs may claim that Shaffer's statement is potentially misleading, but even a misleading statement is not actionable if it has some truth in it. Plaintiffs seem to argue the statement *could* be read to say that all three APAs together handled the bulk of the mishandled cases, it can also be read to mean that if one adds up the cases handled individually by each of the three APAs, the collective total will make up the bulk of the mishandled cases. At best Plaintiffs would succeed in showing that Shaffer's sentence (which, in fact, is straightforward and accurate), can be tortured into ambiguity. But the law is clear that "a statement that is subject to different interpretations is not 'false.'" *List*, 779 F.3d at 633 (quoting *SEIU Dist. 1199*, 158 Ohio App. 3d 769, 2004 Ohio 5662, 822 N.E.2d 424, 430).

### B. Plaintiffs Cannot Prove Defamation for Statements About Their Handling of Cases

To the extent that Plaintiffs challenge statements regarding their handling of cases, the undisputed evidence, including Plaintiffs' own deposition testimony, demonstrates that Plaintiffs cannot prove falsity. In their interrogatory responses, Plaintiffs identify as defamatory statements regarding their handling of uncharged juvenile sexual assault cases that include, but are not limited to, "[t]he prosecutors failed to track the cases, and no charges were filed," (Ex. O, *Cleveland.com* Article), and "[w]hen Whinery, Driscoll and Mussman started looking into cases, they found the assistant prosecutors never fully reviewed them for charges," (Ex. O, *Cleveland.com* Article), and "[t]hey were sitting on . . . desks for years, literally, and nothing was done," (Ex. Q, News 5

14

Report), and "where it ends up that employees just do nothing with the case," (Ex. S, Ideastream

Report).   Plaintiffs' own deposition testimony shows that they cannot prove that any of the

statements about their handling of cases are not substantially true.

Although Hoffman asserts that she did so at her supervisor's instruction, she does not

contest the fact that she put cases on inactive status:

> [Defense Counsel] Q.  Okay. All right. Well, let me just make sure
> I understand this though. You put it in inactive about a month after
> you got it after you made a couple phone calls, correct?
> [Hoffman] A.  Yes.
> Q.  That's the extent of your work on this file?
> A.  Yes.

(Ex. A, Hoffman Depo. Tr. pp. 117-118.)

Hoffman concedes that cases languished on her desk for two years:

> [Defense Counsel] Q.  Okay. So you went back in the intake in
> December of '16, right?
> [Hoffman] A.  Yes.
> Q.  And at that time you had the file on your desk?
> A.  It was there. I didn't remember it was there.
> Q.  You got to answer my questions. You had the file on your
> desk?
> A.  Yes, it was on my desk somewhere.
> Q.  Because it had been there for the prior two years, right?
> A.  Yes.
> Q.  Gathering dust?
> MR. PATTAKOS: Objection
> Q.  Right?
> A.  It was on my desk, yes.
>
> Q.  You weren't working on it, were you?
> A.  No.

(Ex. A, Hoffman Depo. Tr. pp. 125-26.)

Further, Hoffman conceded in her deposition that she does not have evidence to show

that the cases were not reviewed:

> [Defense Counsel] Q.   Okay. Let's go to the next one. "Yet
> prosecutors eventually uncovered 76 cases, including 37 reported
> rapes and 32 reports of gross sexual imposition, that were never fully
> reviewed for charges." That's a false statement?
> [Hoffman] A.  I don't know that that is false, but, again, it says at
> the beginning of the article that I was responsible for the bulk of the
> cases.

(Ex. A, Hoffman Depo. Tr. p. 254.)

> [Defense Counsel]  Q. . . . "And that were never fully reviewed for
> charges." That's true?"
> [Hoffman] A.  I don't know if that's true in every case.

(Ex. A, Hoffman Depo. Tr. p. 255)

Herman also acknowledges neglecting the cases:

> [Defense Counsel]  Q. . . . You did neglect the files?
> . . .
> [Herman]  A. These files came to me as part of the SART Team
> training.  We reviewed them in conjunction with meetings, and the
> aspirational program did not come to fruition; as a consequence
> these files were set aside while I focused on my active caseload.

(Ex. B, Herman Depo. Tr. pp. 112-113.)

> [Defense Counsel]  Q. Okay. And you set them aside for quite a long
> period of time, right? Am I wrong?
> [Herman] A. No, you're not wrong.

(Ex. B, Herman Depo. Tr. p. 113.)

Moreover, Lisa Williamson, CCPO's second-in-charge testified during questioning by
Plaintiffs' counsel that Plaintiff Hoffman "did little or nothing on [three cases] for over a two-year
period" and that (Ex. C, Williamson Depo. Tr. p. 114).  With regards to Plaintiff Herman,
Williamson testified that she had each of the four relevant cases "for over a year" and that "when
she left the intake unit, she just left those files sitting in her office without dealing with them, doing
any work or giving them back to the supervisor to say, hey, somebody's got to work on these, I've
got a [gross sexual imposition] and a rape on a kid."  (Ex. C, Williamson Depo. Tr. pp. 119-20.)

16

Given this testimony, Plaintiffs cannot prove that the challenged statements are not substantially true, or that the substance, the gist, the sting, of the statement was not justified, or that the statements were not rational interpretations of complex facts.  Plaintiffs thus cannot prove the falsity element of a defamation claim for any of the challenged statements.

## IV.    PLAINTIFFS CANNOT PROVE ACTUAL MALICE OR EVEN NEGLIGENCE FOR ANY OF THE CHALLENGED STATEMENTS

The robust protections afforded speech under Ohio law and the United States Constitution require that in order to succeed on their claims Plaintiffs must prove that Defendants acted with actual malice because (i) Plaintiffs are public officials, and (ii) the Defendants enjoy a qualified privilege.

### A. Plaintiffs are Public Officials and Thus Must Prove Actual Malice

Because the challenged comments relate to Plaintiffs' work as assistant prosecuting attorneys, they are public officials.  As such they must prove actual malice to recover for defamation.  The law is clear that public officials are "those among the hierarchy of government employees who have, or appear to the public to have, substantial responsibility for or control over the conduct of governmental affairs." *Rosenblatt* v. *Baer*, 383 U.S. 75, 85 (1966).  They are employees whose position "would invite public scrutiny and discussion of the person holding it, entirely apart from the scrutiny and discussion occasioned by the particular charges in controversy." *Id.* at 87 n.13.  Whether an individual is a public official is a question of law to be determined by the trial court.  *Id.* at 88.

Prosecuting attorneys meet the definition of public official because their positions invite public scrutiny and discussion of the person holding it. As a result, courts have held that prosecuting attorneys are public officials that must demonstrate actual malice to establish a defamation claim.  *See, e.g., Phillips v. Ingham Cty.*, 371 F.Supp.2d 918, 929-931 (W.D. Mich.

17

2005) (holding assistant prosecuting attorney was a public official requiring a showing of actual malice); *Murray v. Bailey*, 613 F. Supp. 1276, 1279-1280 (N.D. Cal. 1985) (holding assistant district attorney to be a public official); *Crane v. Arizona Republic*, 972 F.2d 1511, 1516 (9th Cir. 1992) (holding prosecutor qualified as public official); *Lee v. City & County of San Francisco*, No. 98-16487, 1999 U.S. App. LEXIS 30619 (9th Cir. Nov. 23, 1999) ("As a San Francisco ADA, Plaintiff was a public official.") (citing *Crane*, 972 F.2d 1511, 1525).

Additionally, because the Ohio Supreme Court has held that police officers are public officials for defamation purposes, *see Soke v. The Plain Dealer*, 69 Ohio St. 3d 395, 632 N.E.2d 1282 (1994), and because they both play a similar role for the public, assistant prosecuting attorneys must also be considered public officials.

### B. Defendants' Qualified Privilege Requires Plaintiffs to Prove Actual Malice

In addition, regardless of whether the Court finds that Plaintiffs are public officials, Plaintiffs must prove actual malice because Defendants' challenged statements are protected by a *qualified privilege*. In Ohio a qualified privilege exists "where the publisher and the recipient have a common interest, and the communication is of a kind reasonably calculated to protect and further it." *Hahn v. Kotten*, 43 Ohio St. 2d 237, 331 N.E.2d 713 (1975). The privilege is not limited to specific categories of individuals or statements, but rather applies broadly when a defendant speaks "in the discharge of some public or private duty, whether legal or moral, or in the conduct of his own affairs, in matters where his interest is concerned." *Id.* (quoting Prosser, Law of Torts (4 Ed.) 789, Section 115(3)). Since the privilege is qualified rather than absolute, the defendant must make the statement in a "reasonable manner and for a proper purpose." *Id.* at 243. A qualified privilege does not apply if the defendant makes a defamatory statement with actual malice. *Id.* at paragraph two of the syllabus.

Ohio Courts, including the Ohio Supreme Court, have held that statements to the public about the termination of employees is protected by the qualified privilege. *See, e.g.*, *Wrenn v. Ohio Dept. of Mental Health & Mental Retardation*, 16 Ohio App.3d 160, 163, 474 N.E.2d 1201 (10th Dist.1984) (finding that qualified privilege protected statements to media about termination of superintendent of mental health center were of public interest); *Smith v. Lebanon City Schs.*, 12th Dist. Warren No. CA99-02-024, 1999 Ohio App. LEXIS 5241, at *15-16 (finding that statements to media by public official about suspected misdeeds and termination of secretary are protected by qualified privilege); *Christian v. Beacon Journal Publishing Co.,* 9th Dist. No. 12368, 1986 Ohio App. LEXIS 7155, *8-13 (June 11, 1986) (holding that statements by public officials to news reporters about the termination of a school superintendent were protected by qualified privilege.)

Here, in addition to the public's general interest in knowing issues related to law enforcement, there was a demonstrated public interest in the handling of uncharged juvenile sexual assault cases, as members of the media, as well as the Cleveland Rape Crisis center had reached out to the office. Defendants' statements to the media were done in a reasonable manner, and there is no evidence that they were done for an improper purpose. Thus, the Defendants enjoy qualified privilege for those statements on this additional basis.

### C. The Standard for Proving Actual Malice is Exceptionally Demanding

The standard for proving actual malice is, unsurprisingly, exceptionally demanding. It is not proven by showing "evidence of personal spite[,] ill-will[,] or intention to injure on the part of the [defendant]." *List*, 779 F.3d at 633-34 (quoting *Dupler v. Mansfield Journal Co.*, 64 Ohio St. 2d 116, 119, 413 N.E.2d 1187 (1980)). Instead, the court must consider "[the] defendant's attitude toward the truth or falsity of the publication. . . . There must be a showing that false statements

were made with a high degree of awareness of their probable falsity. . . [and] sufficient evidence to permit the conclusion that the defendant in fact entertained serious doubts as to the truth of his publication." *List*, 779 F.3d at 633-34 (quoting *Dupler*, 64 Ohio St. 2d at 119).

"Where a statement is supported by some basis in fact, courts have found insufficient evidence of actual malice even if the statement is ultimately found to be untrue." *SEIU Dist. 1199*, 158 Ohio App. 3d 769, 2004-Ohio-5662, 822 N.E.2d 424, ¶ 24 (citing *St. Amant v. Thompson*, 390 U.S. 727, 733 (1968)).  A defendant lacks good faith to make a statement shown to be false only "where there is either no basis in fact for the statement or no information upon which the defendant could have justifiably relied in making the statement." *Id.* (citing *St. Amant.* at 732.).  In addition, in this case, none of the statements alleged to be defamatory can be said to hit that standard.  Each of them had "some basis in fact" and were based upon "some information" which the Defendants herein could have justifiably relied upon.

Moreover, a plaintiff must prove actual malice by <u>clear and convincing evidence</u>.  *See McKimm v. Ohio Elections Comm'n*, 89 Ohio St. 3d 139, 147, 729 N.E.2d 364 (2000).  The question of whether the evidence in the record supports a finding of actual malice is a question of law for the court.  *See Id.* at 147.

### D. Plaintiffs Cannot Prove Actual Malice for Any of the Challenged Statements

The Plaintiffs cannot prove actual malice for any of the challenged statements because the evidence is undisputed that Defendants believed their statements to be true.  Nor can Plaintiffs show that Defendants acted in reckless disregard of the truth, because the statements were made only after a thorough month-long investigation into Plaintiffs' handling of the uncharged sexual assault cases.  (Ex. C, Williamson Depo. Tr. pp. 18-19.)  The investigation included a review of the files, meetings where Plaintiffs had the opportunity to present their side of the issue, and high-

level meetings between senior CCPO staff.  Given this investigation, Plaintiffs have no evidence, and certainly no evidence that is clear and convincing, to show that Defendants' subjective mental state contained actual malice.  *Cf. Johnson v. Trumbull County Children Servs. Bd.*, 11th Dist. Trumbull No. 2000-T-0014, 2000 Ohio App. LEXIS 5927, at *6 (2000) (finding that plaintiffs could not prove actual malice because the employer acted "after conducting an investigation, giving appellants an opportunity to be heard, and making its judgment of limited sanction for conduct it found to have been displayed by appellants.").

The bottom line is that it is undisputed that both Plaintiffs had multiple uncharged juvenile sexual assault cases that were neglected and languished for months or years.  What Plaintiffs dispute is whether they were at fault for that, and whether they deserved the punishment they received.  But Plaintiffs lack any evidence, aside from their own self-serving testimony, that Defendants' view of the facts was unreasonable at the time they spoke with the media.  As a result, Plaintiffs cannot show clear and convincing evidence of actual malice, or negligence, by any Defendant.

### E. Even Without an Actual Malice Requirement, Plaintiffs Must Prove Negligence by Clear and Convincing Evidence

Even if Plaintiffs somehow avoid having to prove actual malice, they still must prove by clear and convincing evidence that Defendants acted negligently, or in other words "that the defendant failed to act reasonably in attempting to discover the truth or falsity or defamatory character of the publication."  *Lansdowne v. Beacon Journal Pub. Co.*, 32 Ohio St. 3d 176, 180, 512 N.E.2d 979 (1987).  Defendants' thorough month-long investigation is powerful evidence that they did not act negligently with regards to the truth, and Plaintiffs have no evidence to counter that, and certainly no clear and convincing evidence.

## V.  PLAINTIFFS CANNOT SHOW THAT MANY OF THE CHALLENGED STATEMENTS ARE "OF AND CONCERNING" THEM

In addition, Plaintiffs' claims for defamation fail because, for nearly all of the challenged statements, Plaintiffs cannot prove one of the basic elements of a defamation claim – that the statements were "of and concerning" the Plaintiffs.  "[I]n order to be actionable, a plaintiff in a defamation action must demonstrate that the alleged defamatory statement were 'of and concerning' the plaintiff."  *Great Lakes Capital, Ltd. v. Plain Dealer Publ'g. Co.*, 8th Dist. No. 91215, 2008-Ohio-6495, ¶ 48 (citing *New York Times Co. v. Sullivan*, 376 U.S. 254 (1964)).  "A defamatory communication is made concerning the person to whom its recipient correctly, or mistakenly but reasonably, understands that it was intended to refer."  Restatement (Second) of Torts section 564 (1977).  "Vague, general references to a comparatively large group do not constitute actionable defamation."  *Michigan United Conservation Clubs v. CBS News, Div.*, 665 F.2d 110, 112 (6th Cir. 1981) (citing *Schuster v. U. S. News & World Report, Inc.*, 602 F.2d 850 (8th Cir. 1979)).

## VI.  PLAINTIFFS' FALSE LIGHT CLAIMS FAIL AS A MATTER OF LAW

For the same reasons described above Plaintiffs cannot establish the necessary elements of a false light claim.  The Supreme Court of Ohio has defined the false light tort as follows:

> [O]ne who gives publicity to a matter concerning another that places the other before the public in a false light is subject to liability to the other for invasion of his privacy if (a) the false light in which the other was placed would be highly offensive to a reasonable person, and (b) the actor had knowledge of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the other would be placed.

*Welling v. Weinfeld*, 113 Ohio St.3d 464, 2007-Ohio-2451, 866 N.E.2d 1051, ¶ 61.

"[F]alse-light defendants enjoy protections at least as extensive as defamation defendants" and the "requirements imposed" on a false light claim make it "difficult to prove."  *Welling*, 2007-

Ohio-2451, ¶¶ 51, 58.  In fact, a false-light claim is subjected to more demanding burden than a defamation claim - false light plaintiffs must prove actual malice regardless of whether they are a public or private figure.  *Id* at ¶¶ 58-59.

Here Plaintiffs' false light claims fail for the same reasons their defamation claims fail: they cannot prove falsity, they cannot prove actual malice, and many of the statements are opinions.  *Cf.  Croce v. N.Y. Times Co.*, 345 F. Supp. 3d 961, 994 (S.D. Ohio 2018) ("the same core reasons that necessitate dismissal of [a] defamation claim [may] inform disposition of [a] false light invasion of privacy claim") (quotation and citation omitted).

The Ohio Supreme Court has identified only two scenarios in which a plaintiff can sustain a false light claim where their defamation claims fail: (1) where "the defendant reveals intimate and personal, but false, details of plaintiff's private life, for example, portraying plaintiff as the victim of sexual harassment, . . . or as being poverty-stricken, . . . or as having a terminal illness or suffering from depression"; and (2) where defendant portrays plaintiff "in a *more positive* light than he deserves."  *Welling*, 2007-Ohio-2451, ¶ 39 (citations omitted).  These exceptions do not save Plaintiffs' false light claims because they do not fit into either exception.

## VII.    THE INDIVIDUAL DEFENDANTS ARE ENTITLED TO STATUTORY IMMUNITY UNDER OHIO R.C. 2744.03

Plaintiffs' defamation and false light claims against the individual defendants, Prosecutor O'Malley, Mussman, Whinery, and Driscoll (collectively, the "Individual Defendants"),  also fail because the Individual Defendants are entitled to statutory immunity from liability and the undisputed facts show that Plaintiffs lack the evidence necessary to overcome that immunity.

Ohio R.C. 2744.03(A)(6) provides that the employee of a political subdivision is immune from liability unless one of the three following exceptions from immunity applies:

> (a) The employee's acts or omissions were manifestly outside the scope of the employee's employment or official responsibilities;
>
> (b) The employee's acts or omissions were with malicious purpose, in bad faith, or in a wanton or reckless manner;
>
> (c) Civil liability is expressly imposed upon the employee by a section of the Revised Code. . . .

R.C. 2744.03(A)(6).

The only relevant exception here is 2744.03(A)(6)(b).  Plaintiffs cannot avail themselves of 2744.03(A)(6)(a) because they admit in their Complaint that the alleged actions by the Individual Defendants were taken "in the course and scope of Defendants' employment."  (Compl., ECF 1, ¶¶ 169, 179).  Nor has Plaintiff identified any section of the Revised Code which imposes express liability on any of the Individual Defendants.  As a result, Plaintiffs can only overcome the Individual Defendants' statutory immunity from liability by proving that they acted "with malicious purpose, in bad faith, or in a wanton or reckless manner."  R.C. 2744.03(A)(6)(b).

The Ohio Supreme Court has ruled that the question of "whether an employee of a political subdivision is entitled to immunity under R.C. 2744.03(A)(6) remains a question of law to be determined by the court." *Moore v. City of Cleveland*, 8th Dist. Cuyahoga No. 104466, 2017-Ohio-1156, ¶ 16 (citing *Conley v. Shearer*, 64 Ohio St.3d 284, 292, 1992-Ohio-133, 595 N.E.2d 862)).  Additionally, on a motion for summary judgment on the grounds of immunity under R.C. 2744.03(A)(6)(b), the court must determine "whether, based on the evidence in the record, reasonable minds could conclude that any of the officers acted 'with malicious purpose, in bad faith, or in a wanton or reckless manner' so as to preclude immunity."  *Moore*, 2017-Ohio-1156, ¶ 25 (citation omitted). Summary judgment is warranted for the Individual Defendants because there is no evidence in the record to satisfy R.C. 2744.03(A)(6)(b) that any of the Defendants acted "with malicious purpose, in bad faith, or in a wanton or reckless manner."

24

**VIII. BECAUSE PLAINTIFFS CANNOT MAKE OUT DEFAMATION OR FALSE LIGHT CLAIMS AGAINST ANY OF THE INDIVIDUAL DEFENDANTS THE CLAIMS AGAINST CUYAHOGA COUNTY MUST BE DISMISSED**

Plaintiffs have sued Defendant Cuyahoga County on the theory that the County is vicariously liable, presumably under a mistaken reading of the law of agency, for the acts of the Individual Defendants.  (Compl., Doc. #1, ¶ 17.) However, because Plaintiffs cannot make out a claim of defamation or false light against any of the Individual Defendants, and the County can only speak through its employees, the claims against the County must be dismissed, too.

**<u>CONCLUSION</u>**

For the above reasons Defendants respectfully request that this Court grant summary judgment in Defendants' favor on Plaintiffs' defamation and false light claims.

Respectfully submitted,

MICHAEL C. O'MALLEY, Prosecuting
Attorney of Cuyahoga County, Ohio

By:    <u>*/s/ David G. Lambert*</u>
David G. Lambert (0030273)
Nora E. Poore (0079609)
Kenneth M. Rock (0096482)
Assistant Prosecuting Attorneys
1200 Ontario Street, 8th Floor
Cleveland, Ohio  44113
Tel: (216) 443-7829 Fax: (216) 443-7602
dlambert@prosecutor.cuyahogacounty.us
npoore@prosecutor.cuyahogacounty.us
krock@prosecutor.cuyahogacounty.us

*Attorneys for Defendants Michael C. O'Malley, Gregory Mussman, Joanna Whinery, Jennifer Driscoll, and Cuyahoga County*

## CERTIFICATION OF COMPLIANCE WITH L. R. 7.1(f)

This memorandum is 25 pages long (not including this certificate).  The parties have been granted leave by the Court to file memoranda up to 25 pages in length, and thus this memorandum complies with L.R. 7.1(f).

/s/ David G. Lambert
David G. Lambert
Assistant Prosecuting Attorney

## CERTIFICATE OF SERVICE

I certify that this 9th day of September 2019 a copy of the foregoing was electronically filed.  Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

/s/ David G. Lambert
David G. Lambert (0030273)
Assistant Prosecuting Attorney