UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| LAURA HOFFMAN, et al., | ) | CASE NO. 1:18CV309 |
| | ) | |
| Plaintiffs, | ) | JUDGE CHRISTOPHER A. BOYKO |
| | ) | |
| vs. | ) | OPINION AND ORDER |
| | ) | |
| MICHAEL C. O'MALLEY, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**CHRISTOPHER A. BOYKO, J.**:

This matter comes before the Court upon the Motion (ECF DKT #40) of Defendant Cuyahoga County for Summary Judgment as to Plaintiff Linda Herman's Claims. For the following reasons, the Motion is granted.

**I. FACTUAL BACKGROUND**

Defendant Michael C. O'Malley took office as Cuyahoga County Prosecutor on January 2, 2017. O'Malley installed Defendant Gregory Mussman as Chief of the Juvenile Justice Unit and Defendant Joanna Whinery as Managing Attorney in that Unit.

Within a few short weeks, a representative of the Cleveland Rape Crisis Center contacted the Prosecutor's Office with concerns about a number of sexual assault cases

involving juvenile victims which had been reported but never charged. Mussman, Whinery and Defendant Jennifer Driscoll, an Assistant Prosecuting Attorney, began an investigation focusing on the Juvenile Division's intake of sexual assault cases.

The investigation revealed that nearly two thousand cases had been placed on the "inactive" list in the computerized case management system. In addition, the investigation uncovered seventy-six sexual assault cases that were never fully reviewed for charges. Plaintiff Linda Herman handled four of the uncharged cases.

In the wake of the investigation, several Assistant Prosecuting Attorneys were disciplined with demotions, suspensions and verbal reprimands. Robin Belcher, the previous Managing Attorney of the Intake Unit, resigned. Herman was offered the option of resigning or being terminated. She chose to resign her employment on February 8, 2017. Herman was fifty-two years old at the time of her termination and was approximately twenty years older than her peers in the office.

Herman was hired as an Assistant Prosecuting Attorney in February of 2015 and was assigned to the Juvenile Justice Unit. She worked in the intake section for six months until she was rotated into the traffic courtroom. In January of 2016, Herman began an assignment in a magistrate's courtroom, prosecuting misdemeanors and low-level felonies. In November, she was assigned to a judge's courtroom and began prosecuting serious juvenile offenses. Herman never received any discipline and received consistently positive evaluations from her supervisors.

In late 2015, Herman's supervisor, Robin Belcher, proposed a voluntary program for prosecutors to join a Sexual Assault Review Team (SART) and to receive specialized training

in preparing and prosecuting juvenile sex crimes in cooperation with the Cleveland Police Sex Crimes Unit.  Herman offered to participate.  The Cleveland Police Department forwarded a number of files for the Juvenile Court Prosecutors to review, determine what additional evidence was needed and decide whether the offenders should be charged or whether Children and Family Services should become involved.  Belcher distributed the files to the members of the SART Team and met with them periodically to discuss the recommended course of action.  At some point, Belcher realized that the Assistant Prosecutors' volume of courtroom work was such that the SART program became infeasible.  SART was abandoned sometime in the summer of 2016 because sufficient resources could not be dedicated to it. (Belcher Deposition, ECF DKT #40-11 at p. 93, *et seq.*).

As part of the O'Malley administration's investigation, Defendant Whinery sent out emails to the Juvenile Court Prosecutors inquiring about uncharged sexual assault cases.  On January 18, 2017, Whinery sent an email stating:  "IF YOU HAVE NOT ALREADY DONE SO, I NEED AN ACCOUNTING FROM EVERYONE AS TO ANY SEX CASES THAT YOU HAVE THAT HAVE NOT BEEN CHARGED - ASAP."  In addition, Defendants Mussman and Whinery instructed support staff to go to each Assistant Prosecuting Attorney's office and search for uncharged cases that were not entered in the Juvenile Court's docketing system known as "Justice Matters."

On January 24, 2017, Mussman called a meeting of the Juvenile Court Unit and announced that an unacceptable number (i.e., over sixty) of sexual assault cases were sitting uncharged.

On January 27, 2017, Herman came forward with four files she had in her office.  She

did not consider them "uncharged" cases, rather police reports on "cold cases" that had been reviewed as part of the SART program.  She provided them to Whinery, along with her notes and drafts of non-prosecution letters she prepared for two of the files.

In early February 2017, Defendants Williamson, Whinery and Mussman began conducting interviews with seven employees of the Juvenile Justice Unit:  Ralph Kolasinski, Herman, Plaintiff Laura Hoffman, Lakesha Johnson, Kristen Hatcher, Joanna Lopez and Chad Cleveland.

Following the interview, Herman was notified of a pre-disciplinary conference set for February 7, 2017.  At that conference, Herman was asked to explain her handling of the neglected sexual assault cases.

Thereafter, Williamson, Mussman, the chiefs of the criminal divisions, the HR director and O'Malley met and discussed the findings of the investigation.  Deciding that discipline was justified, Herman was offered the option of resigning or being discharged. Herman chose to resign on February 8, 2017.

On February 8, 2018, Plaintiffs Herman and Hoffman brought this action for damages against Cuyahoga County, O'Malley, Williamson, Mussman, Whinery and Driscoll, in their official and personal capacities, for defamation, discrimination and wrongful termination of employment in violation of the Americans with Disabilities Act of 1990 ("ADA"), the Age Discrimination in Employment Act ("ADEA") and Ohio Revised Code Sections 4112.02(A) and 4112.14.  Herman, Hoffman and Belcher were the only Assistant Prosecutors forced to resign or be terminated by the Cuyahoga County Prosecutor's Office in connection with the allegedly mishandled cases.  Herman contends that she was terminated, in substantial part,

because of her age. She is significantly older than her peers who were not terminated for neglecting cases.

On September 9, 2019, Defendant Cuyahoga County moved for summary judgment based on the argument that Herman's age played no role in the decision to ask her to resign. Defendant maintains that Plaintiff cannot make out a prima facie case of age discrimination and that she cannot prove that Defendant's proffered reasons for her discharge are pretextual.

## II. LAW AND ANALYSIS

**STANDARD OF REVIEW**

**Motion for Summary Judgment**

A party may move for summary judgment, identifying each claim or defense, on which summary judgment is sought. Fed. R. Civ. P. 56(a). The court may grant summary judgment if the movant shows that there is no genuine dispute as to any material facts and the movant is entitled to judgment as a matter of law. *Id*. Subsection (c)(1) of Rule 56 provides the standard for summary judgment:

> A party asserting that a fact cannot be or is genuinely disputed must
>
> support the assertion by:
>
> (A) citing to particular parts of materials in the record, including
>
> depositions, documents, electronically stored information, affidavits or
>
> declarations, stipulations [...], admissions, interrogatory answers, or other
>
> materials; or
>
> (B) showing that the materials cited do not establish the absence or
>
> presence of a genuine dispute, or that an adverse party cannot produce

admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1).

Summary judgment is warranted if, after adequate discovery, the nonmoving party has failed to make a showing sufficient to establish the existence of an element essential to that party's case and upon which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A complete failure of proof regarding an essential element of the nonmoving party's case renders all other facts immaterial. *Id*. at 323. As a result, the moving party is awarded judgment as a matter of law because the nonmoving party has failed to satisfy his burden of proof and make a sufficient showing on an essential element of his case. *Id*. The party seeking summary judgment has the initial burden of informing the court of the basis for its motion and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file together with the affidavits which it believes demonstrate the absence of a genuine issue of material fact. *Id*. The burden of proof then shifts to the nonmoving party, who must set forth specific facts showing that there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).

Summary judgment will not granted if the dispute about the fact is genuine. *Id*. A dispute about a fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Id*. There is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. *Id*. at 250. If the evidence is merely colorable or is not significantly probative, summary judgment may be granted. *Id*. In ruling on a defendant's motion for summary judgment, the judge's inquiry should be whether a reasonably-minded jury could return a verdict in favor of the plaintiff on

the evidence presented. *Id*. at 252.

The court does not have the responsibility to search the record *sua sponte* for genuine issues of material fact. *Betkerur v. Aultman Hospital Ass'n.*, 78 F. 3d 1079, 1087 (6th Cir. 1996).

**Age Discrimination in Employment**

The ADEA prohibits an employer from discharging an individual because of that individual's age. 29 U.S.C. § 623(a)(1). A plaintiff bringing an action under the ADEA has the burden of proof to establish that plaintiff's age was the "but-for" reason for his or her termination. *Blizzard v. Marion Tech. College*, 698 F.3d 275, 283 (6th Cir. 2012), citing *Gross v. FBL Fin. Servs. Inc.*, 577 U.S. 167, 177 (2009). "Age discrimination claims brought under the Ohio Statute are analyzed under the same standards as federal claims brought under the ADEA." *Blizzard*, 698 F.3d at 283 (6th Cir. 2012) (citing *Wharton v. Gorman-Rupp Co.*, 309 F. App'x. 990, 995 (6th Cir. 2009)) (internal quotation marks omitted). Plaintiff may prove a violation by either direct or circumstantial evidence. *Blizzard, id.*

Direct evidence of employment discrimination is "that evidence which, if believed, requires the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions." *Alberty v. Columbus Twp.*, 730 F.App'x. 352, 356 (6th Cir. 2018). "Direct evidence of age discrimination alone is not enough to avoid summary judgment in an ADEA action," and there must be proof of a causal connection between the alleged remarks and the adverse employment action. *Antonucci v. Goodyear Tire & Rubber Co.*, No. 93-3135, 1994 WL 49569 (6th Cir. Feb. 17, 1994) (citing *Monaco v. Fuddruckers, Inc.*, 1 F.3d 658 (7th Cir. 1993)).

Comparatively, circumstantial evidence is "proof that does not on its face establish discriminatory animus, but does allow a fact finder to draw a reasonable inference that discrimination occurred." *Id.* at 358, quoting *Geiger v. Tower Auto.*, 579 F.3d 614, 620 (6th Cir. 2009).

Where a plaintiff is unable to produce direct evidence of age discrimination, the court must follow the burden-shifting framework articulated by the Supreme Court of the United States in *McDonnell Douglas Corp. v. Green*. Under *McDonnell Douglas*, once the plaintiff succeeds in making a prima facie case of age discrimination, the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the termination. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). If the defendant meets its burden, then the burden shifts back to the plaintiff to demonstrate that the defendant's proffered reason is a pretext. *Blizzard*, 698 F.3d at 283, citing *Sutherland v. Mich. Dep't of Treasury*, 344 F.3d 603, 615 (6th Cir. 2003).

**Prima Facie Case**

A plaintiff establishes a prima facie case by showing that (1) plaintiff is a member of a protected class; (2) plaintiff was qualified for the position; (3) the employer took an adverse employment action against plaintiff; and (4) there are "circumstances that support an inference of discrimination." *Blizzard*, 698 F.3d at 283 (quoting *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 510 (2002)). Such circumstances can include when the employer replaced the plaintiff with a younger employee and when the employer "treated similarly situated, non-protected employees more favorably." *Mickey v. Zeidler Tool & Die Co.*, 516 F.3d 516, 521-22 (6th Cir. 2008) (citing *Tuttle v. Metro. Gov't of Nashville*, 474 F.3d 307,

317 (6th Cir. 2007).

Herman does not provide any direct evidence of age discrimination by Defendant; but contends that she can establish a prima facie case. Defendant does not dispute the first three elements of Herman's prima facie case of age discrimination; but argues that she cannot demonstrate that she was treated differently than similarly situated, non-protected employees.

The burden at the prima facie stage is not an onerous one, and it is easily met. *Provenzano v. LCI Holdings, Inc.*, 663 F.3d 806, 813 (6th Cir. 2011). The prima facie phase "merely serves to raise a rebuttable presumption of discrimination by eliminating the most common nondiscriminatory reasons" for an employee's termination. *Cline v. Catholic Diocese of Toledo*, 206 F. 3d 651, 660 (6th Cir. 2000).

In her Brief in Opposition, Herman, for the first time, suggests that she may meet the fourth element of her prima facie case by showing that Defendant replaced her with a significantly younger person. (ECF DKT #48 at 15, citing *Grosjean v. First Energy Corp.*, 349 F.3d 332, 335 (6th Cir. 2003)). However, the Court notes that the Complaint only contains the allegation that younger employees "just as involved in the alleged misconduct" were "either not disciplined in any way or allowed to keep their jobs at the office." (Complaint, ECF DKT #1, ¶¶ 9, 110). Herman's tardy assertion that she was replaced by someone outside the protected class is not permissible. A plaintiff may not raise a new legal claim for the first time in response to the opposing party's summary judgment motion. See *Tucker v. Union Needletrades, Industrial and Textile Employees*, 407 F.3d 786, 788 (6th Cir. 2005).

Nevertheless, Herman has shown that she was treated less favorably than younger

employees who were similarly situated in all relevant respects. To establish the "similarly situated" element, a plaintiff must compare her treatment with individuals who "dealt with the same supervisor, have been subject to the same standards and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it. *Jackson v. FedEx Corporate Servs., Inc.*, 518 F.3d 388, 393 (6th Cir. 2008).

Herman is able to show that other Assistant Prosecuting Attorneys working with Robin Belcher and volunteering to review police reports in connection with the SART Team, handled their files no more competently or professionally than she, but were permitted to keep their jobs. (See, ECF DKT #40-4 Williamson Deposition; ECF DKT #40-11 Belcher Deposition). Specifically, Lakesha Johnson, who was approximately thirty-five years old, was investigated for mishandling eighteen files yet was allowed to keep her job with the Prosecutor's Office. (ECF DKT #40-4 Williamson Deposition; ECF DKT #48, Exhibit 1).

**Legitimate Non-Discriminatory Reason**

Herman has established a prima facie case of age discrimination. Under *McDonnell Douglas*, the burden of production now shifts to Defendant to articulate a nondiscriminatory reason for its adverse employment action against Plaintiff. *Alberty v. Columbus Twp.*, 730 F.App'x. 352, 358 (6th Cir. 2018). An employer is "entitled to judgment as a matter of law if the record conclusively reveals some other, nondiscriminatory reason, or if the plaintiff created only a weak issue of fact as to whether the employer's reason was untrue and there was abundant and uncontroverted independent evidence that no discrimination had occurred." *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 148 (2000).

Defendant asserts that Herman treated the four cases assigned to her as "academic exercises" or "cold cases," rather than as real sexual assault reports in need of resolution. Herman did not handle the cases in a timely and efficient manner — allowing them to sit unaddressed for a year or more. In early 2017, Herman failed to come forward in a timely manner with her assigned, uncharged cases despite multiple requests and demands from supervisors.

Generally, poor work performance is a legitimate and nondiscriminatory reason for discharge. *Heck v. Bd. of Trustees*, 12 F.Supp.2d 728, 740 (S.D. Ohio 1998), *accord Danielson v. Lorain*, 938 F.2d 681, 684 (6th Cir. 1991) (stating that workers who poorly perform their jobs are not insulated from dismissal simply because they are members of the protected age group). The Court finds that Defendant has stated a legitimate, nondiscriminatory reason for Herman's termination: Herman's neglect of cases and failure to understand her duties as a Juvenile Court prosecutor. Accordingly, the burden shifts to Herman to establish that the Defendant's stated reason for termination was merely a pretext.

**Pretext**

Once the plaintiff has established a prima facie case of age discrimination and the defendant has countered with a legitimate, nondiscriminatory reason for terminating plaintiff, the burden shifts back to plaintiff to establish that defendant's stated reason for discharge is pretextual. *Blizzard*, 698 F.3d at 285.

At the pretext stage, the plaintiff must produce sufficient evidence from which a jury could reasonably reject the defendant's stated reasons for termination. *Blizzard*, 698 F.3d at 285. To establish pretext, a plaintiff must show that: "(1) the proffered reasons had no basis

in fact, (2) the proffered reasons did not actually motivate discharge, or (3) they were insufficient to motivate discharge." *Id.*, quoting *Chattman v. Toho Tenax Am., Inc.*, 686 F.3d 339, 349 (6th Cir. 2012) (Emphasis removed).

Herman asserts that Defendant's proffered reasons for her termination are false and ignore the concept of prosecutorial discretion. According to Herman, Defendant's characterization of mishandled cases is based upon differences between two Prosecutor's administrations as to classifying files and allocating limited resources.

Herman also contends that she was not responsible for "mishandling" any matters; but reasonably followed her SART Team supervisor's instructions.

Defendant accuses Herman of attempting to hide her neglected files. But, Herman did not immediately bring forward her SART files because Defendant did not request them: "No, I would not have because I didn't have any uncharged rape cases, sex cases. I had four police reports from the SART team." (ECF DKT #40-3, Herman Deposition at 103:22-24). Herman was surprised that her work on the SART files was being scrutinized by the new O'Malley administration.

Even assuming Herman somehow mishandled files, she argues that was not the real reason for her termination. Instead, Herman was targeted as a scapegoat due to her age for a "publicity stunt" or "fake scandal" meant to disparage the previous administration of Prosecutor McGinty. Herman maintains that a reasonable jury could find Defendant's reasons to be pretext because similarly situated prosecutors, implicated in Defendant's scandal but significantly younger than she, were permitted to keep their jobs.

As a preliminary matter, in order to prove that Defendant's stated reasons for

-12-

terminating Herman had no basis in fact, Herman is required to present evidence that shows that the reasons given by Defendant for the discharge "simply did not happen." *Alberty*, 730 F.App'x. at 361. Pretext "is a commonsense inquiry: did the employer [take action against] the employee for the stated reasons or not?" *Chen v. Dow Chem. Co.*, 580 F.3d 394, 400 at n.4 (6th Cir. 2009).

Defendant took the disciplinary action against Herman for neglect and mishandling of sexual assault files. Herman's evidence does not demonstrate that Defendant's explanation for discharge did not happen. Rather, her response is that these matters were academic exercises intended for training purposes. Herman also insists that she was following her supervisor's instructions and was not authorized to decide what should, or should not be charged. Herman points to prosecutorial discretion and to an effort to publicize a former administration's malfeasance.

As for the treatment of other Assistant Prosecuting Attorneys in the Judicial Justice Unit, Defendant has shown that none had the delays in processing files that Herman had. (ECF DKT #40-4, Williamson Deposition at 134-135). With regard to Lakesha Johnson, who was measurably younger than Plaintiff:

> A. [Williamson]: I'll start with Lakesha. Lakesha had 18 cases I think that we had identified. At first glance that looked really bad and we thought, wow, you've got 18 cases, but when she provided us with e-mails and provided us with information about the number of times that she had either discussed cases with Robin [Belcher] or had gone to Robin when she provided us with information regarding when she had received those matters, it changed the picture and it came down to, I think, five or six cases that she had actually had for about four months where there was little or nothing done on them. *Id.* at 139-140.

Ultimately, Lakesha Johnson received a one-month suspension without pay. After

investigation and pre-disciplinary conferences, Defendant determined that Herman's conduct or misfeasance was more egregious than Johnson's and other members of the SART Team.

The Sixth Circuit follows a "modified honest belief" standard, which requires that to avoid a finding of pretext, an employer wishing to articulate a nondiscriminatory reason for terminating an employee must be able to establish that it reasonably relied on the particularized facts before it at the time the decision was made. *Blizzard*, 698 F.3d at 286. In turn, the employee must be able to produce contrary evidence that indicates that the employer's error was too obvious to be unintentional. *Id*.

Further, the honest belief rule requires that the employee allege more than a dispute over the facts upon which the discharge was based. *Id.* The employee must provide evidence that shows that the employer did not honestly believe in the proffered nondiscriminatory reason for its adverse employment action. *Id*.

So long as an employer honestly believed its proffered reason, an employee cannot show pretext, even if the facts are later shown to be incorrect. *Segel v. Kimberly-Clark Corp*., 473 F.App'x 416, 421 (6th Cir. 2012); *Smith v. Chrysler Corp*., 155 F.3d 799, 806 (6th Cir. 1998). Courts may not second-guess the business judgment of an employer but must instead determine "whether the employer gave an honest explanation of its behavior." *Hedrick v. W. Res. Care Sys.,* 355 F.3d 444, 462 (6th Cir. 2004). "Time and again we have emphasized that [o]ur role is to prevent unlawful hiring practices, not to act as a super personnel department that second guesses employers' business judgments." *Corell v. CSX Transp., Inc*., 378 F.App'x 496, 505 (6th Cir. 2010) quoting *Risch v. Royal Oak Police Dept*., 581 F.3d 383, 399 (6th Cir. 2009).

Herman argues that Defendant's real reason for the discipline meted out to her, Plaintiff Hoffman and Belcher was in furtherance of a publicity stunt designed to disparage political opponents in the previous administration. (Brief in Opposition, ECF DKT #48 at 18). To show that Defendant's actions were not evenhanded in terminating her and merely "slapping the wrists" of others in her unit, Herman quotes O'Malley as saying: "neglecting even one sexual assault case is unacceptable."

Herman has no evidence, beyond speculation, that her dismissal was politically motivated. Even if she had sufficient evidence to back up her theory, that would not show a discriminatory animus toward her because of her age.

Herman's evidence constitutes personal belief and conjecture, which are insufficient to establish pretext. *Grizell v. City of Columbus Div. of Police*, 461 F.3d 711, 724 (6th Cir. 2006). Herman has failed to meet her burden of proving that Defendant's stated reason for requiring her to resign or be terminated was a pretext for impermissible age discrimination. Therefore, Defendant is entitled to summary judgment as a matter of law.

### III. CONCLUSION

For these reasons, the Motion (ECF DKT #40) of Defendant Cuyahoga County for Summary Judgment as to Plaintiff Linda Herman's Claims is granted.

**IT IS SO ORDERED.**

**DATE: March 18, 2020**

 s/Christopher A. Boyko
**CHRISTOPHER A. BOYKO**
**Senior United States District Judge**