# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | | |
|---|---|---|
| LAURA HOFFMAN, et al., | ) | CASE NO. 1:18CV309 |
| | ) | |
| Plaintiff, | ) | JUDGE CHRISTOPHER A. BOYKO |
| | ) | |
| vs. | ) | OPINION AND ORDER |
| | ) | |
| MICHAEL C. O'MALLEY, et al., | ) | |
| | ) | |
| Defendant. | ) | |

**CHRISTOPHER A. BOYKO, J.**:

This matter comes before the Court upon the Motion (ECF DKT #42) of Defendant Cuyahoga County for Summary Judgment as to Plaintiff Laura Hoffman's Claims. For the following reasons, the Motion is granted.

## I. FACTUAL BACKGROUND

Defendant Michael C. O'Malley took office as Cuyahoga County Prosecutor on January 2, 2017. O'Malley installed Defendant Gregory Mussman as Chief of the Juvenile Justice Unit and Defendant Joanna Whinery as Managing Attorney in that Unit.

Within a few short weeks, a representative of the Cleveland Rape Crisis Center contacted the Prosecutor's Office with concerns about a number of sexual assault cases

involving juvenile victims which had been reported but never charged. Mussman, Whinery, Defendant Lisa Williamson and Defendant Jennifer Driscoll began an investigation focusing on the Juvenile Division's intake of sexual assault cases.

The investigation revealed that nearly two thousand cases had been placed on the "inactive" list in the computerized case management system. In addition, the investigation uncovered seventy-six sexual assault cases that were never fully reviewed for charges. Plaintiff Laura Hoffman handled three of the uncharged cases.

In the wake of the investigation, several Assistant Prosecuting Attorneys were disciplined with demotions, suspensions and verbal reprimands. Robin Belcher, the previous Managing Attorney of the Intake Unit, resigned. Plaintiff Linda Herman was offered the option of resigning or being terminated. She chose to resign her employment on February 8, 2017. Hoffman was similarly offered the choice of resigning or being terminated. She resigned her employment with the Cuyahoga County Prosecutor's Office on February 8, 2017. Hoffman was born with optic nerve atrophy, a genetic condition that severely impairs her vision. During her term of employment, Hoffman made requests for accommodation. She was provided with assistive technology such as a text enlargement program and a portable closed-circuit television. In early 2016, Hoffman's request for permanent placement in the Juvenile Justice Unit was granted. When Prosecutor O'Malley took office, he announced that anyone permanently assigned to the Juvenile Justice Unit would either have to rotate into the adult division or apply for another position within the Prosecutor's office. After much back-and-forth, Hoffman provided the new HR director, Jason Sobczyk, with documentation he requested regarding her disability and any accommodations she enjoyed.

As late as February 6, 2017, Sobczyk remained unsure if Hoffman could keep her permanent Juvenile Unit placement.

Hoffman was hired as an Assistant Prosecuting Attorney on June 30, 2014 and began in the Juvenile Justice Unit's intake section. She rotated into the traffic courtroom and then handled delinquency matters before magistrates and judges. Hoffman also served as the "on-call" prosecutor two to three times a month. She always received satisfactory, if not excellent, performance reviews.

In January of 2017, when the O'Malley administration took over, Hoffman's workload was increased and she was assigned a difficult overnight schedule. On January 13, 2017, Hoffman was assigned to Judge Floyd's courtroom, requiring her to bring her old docket current and to prepare for five trials in the new courtroom.

As part of the O'Malley administration's investigation, Defendant Whinery sent out emails to the Juvenile Court Prosecutors inquiring about uncharged sexual assault cases. On January 18, 2017, Whinery sent an email stating: "IF YOU HAVE NOT ALREADY DONE SO, I NEED AN ACCOUNTING FROM EVERYONE AS TO ANY SEX CASES THAT YOU HAVE THAT HAVE NOT BEEN CHARGED - ASAP." In addition, Defendants Mussman and Whinery instructed support staff to go to each Assistant Prosecuting Attorney's office and search for uncharged cases that were not entered in the Juvenile Court's docketing system known as "Justice Matters."

On January 24, 2017, Mussman called a meeting of the Juvenile Court Unit and announced that an unacceptable number (i.e., over sixty) of sexual assault cases were sitting uncharged.

Hoffman checked her office and found two sexual assault files from 2014 which she had designated as inactive after consultation with then-intake supervisor, Belcher. If the assigned prosecutor and the supervisor determined that a case could not move forward without additional information or because of uncooperative witnesses, the matter would be marked inactive and would be removed from the prosecutor's assigned case list. (Belcher Deposition, ECF DKT #40-11 at 44-47; Hoffman Deposition, ECF DKT #42-2 at 50). Hoffman notified Whinery as soon as she realized that these two cases remained assigned to her despite the inactive designation.

On February 1, 2017, Hoffman was called for an interview with Mussman, Williamson and Whinery. They questioned her about four sexual assault cases, including the two inactive files from 2014.

Following the interview, Hoffman was notified of a pre-disciplinary conference set for February 7, 2017. She was asked to explain her handling of the four uncharged sexual assault cases.

Thereafter, Williamson, Mussman, the chiefs of the criminal division, the HR director and O'Malley met and discussed the findings of the investigation. The investigating team recommended to O'Malley "possibly not firing them [Herman and Hoffman]" although "it was bad." (Williamson Deposition, ECF DKT #40-4 at 22-25). O'Malley decided, nonetheless, that discipline was justified for Neglect of Duty. Hoffman was offered the option of resigning or being discharged. Hoffman chose to resign on February 8, 2017.

On February 8, 2018, Plaintiffs Herman and Hoffman brought this action for damages against Cuyahoga County, O'Malley, Williamson, Mussman, Whinery and Driscoll, in their

official and personal capacities, for defamation, discrimination and wrongful termination of employment in violation of the Americans with Disabilities Act of 1990 ("ADA"), the Age Discrimination in Employment Act ("ADEA") and Ohio Revised Code Sections 4112.02(A) and 4112.14. Herman, Hoffman and Belcher were the only Assistant Prosecutors forced to resign or be terminated by the Cuyahoga County Prosecutor's Office in connection with the allegedly mishandled cases. Hoffman contends that she was terminated, in substantial part, because of her physical disability and Defendants' unwillingness to provide her reasonable accommodation. She argues that her peers, who did not suffer with disabilities, were not terminated for neglecting cases. Hoffman points, among others, to Kristen Hatcher and Chad Cleveland who also reported to Belcher in the Juvenile Unit and who were held responsible for neglecting sexual abuse cases. Neither one was terminated.

On September 9, 2019, Defendant Cuyahoga County moved for summary judgment based on the argument that Hoffman's disability played no role in the disciplinary decision. Defendant maintains that Hoffman cannot make out a prima facie case of disability discrimination nor of failure to accommodate and that she cannot prove that Defendant's proffered reasons for her discharge are pretextual.

## II. LAW AND ANALYSIS

### STANDARD OF REVIEW

#### Motion for Summary Judgment

A party may move for summary judgment, identifying each claim or defense, on which summary judgment is sought. Fed. R. Civ. P. 56(a). The court may grant summary judgment if the movant shows that there is no genuine dispute as to any material facts and the

movant is entitled to judgment as a matter of law. *Id.* Subsection (c)(1) of Rule 56 provides the standard for summary judgment:

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>
> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations [...], admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.
>
> Fed. R. Civ. P. 56(c)(1).

Summary judgment is warranted if, after adequate discovery, the nonmoving party has failed to make a showing sufficient to establish the existence of an element essential to that party's case and upon which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A complete failure of proof regarding an essential element of the nonmoving party's case renders all other facts immaterial. *Id.* at 323. As a result, the moving party is awarded judgment as a matter of law because the nonmoving party has failed to satisfy his burden of proof and make a sufficient showing on an essential element of his case. *Id.*

The party seeking summary judgment has the initial burden of informing the court of the basis for its motion and identifying those portions of the pleadings, depositions, answers

to interrogatories, and admissions on file together with the affidavits which it believes demonstrate the absence of a genuine issue of material fact. *Id*. The burden of proof then shifts to the nonmoving party, who must set forth specific facts showing that there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).

Summary judgment will not granted if the dispute about the fact is genuine. *Id*. A dispute about a fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Id*. There is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. *Id*. at 250. If the evidence is merely colorable or is not significantly probative, summary judgment may be granted. *Id*. In ruling on a defendant's motion for summary judgment, the judge's inquiry should be whether a reasonably-minded jury could return a verdict in favor of the plaintiff on the evidence presented. *Id*. at 252.

The court does not have the responsibility to search the record *sua sponte* for genuine issues of material fact. *Betkerur v. Aultman Hospital Ass'n.*, 78 F. 3d 1079, 1087 (6th Cir. 1996).

**Disability Discrimination in Employment**

The ADA makes it unlawful for an employer to "discriminate against a qualified individual on the basis of a disability." 42 U.S.C. § 12112(a). Defendant does not dispute that Hoffman suffers from a disability.

The ADA defines "discriminate" to include, "not making reasonable accommodation to the known physical ... limitations of an otherwise qualified individual with a disability" unless the employer "can demonstrate that the accommodation would impose an undue

hardship." *Id.* § 12112(b)(5)(A); *Kleiber v. Honda of America Mfg., Inc*. 485 F.3d 862, 868 (6th Cir. 2007). An "otherwise qualified individual" is one who "with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." *Id.* § 12111(8). *See also Rorrer v. City of Stow* 743 F.3d 1025, 1038 (6th Cir. 2014).

Claims for disability discrimination and for failure to provide reasonable accommodation under Ohio law are analyzed similarly to a claim brought under the ADA. *Rhoads v. Board of Educ. of Mad River Local School Dist*. 103 F.App'x. 888, 891 (6th Cir. 2004). ("As a general matter, Ohio courts look to federal regulations and case law interpreting the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101—12203, for guidance when applying Ohio disability discrimination laws,") citing *City of Columbus Civil Serv. Comm'n v. McGlone,* 82 Ohio St.3d 569, 697 N.E.2d 204, 206–07 (1998). Therefore, the Court will apply the same analysis to both Hoffman's federal ADA claims and her state employment discrimination claims.

Direct evidence of employment discrimination is "that evidence which, if believed, requires the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions." *Alberty v. Columbus Twp.*, 730 F.App'x. 352, 356 (6th Cir. 2018).

Comparatively, circumstantial evidence is "proof that does not on its face establish discriminatory animus, but does allow a fact finder to draw a reasonable inference that discrimination occurred." *Id*. at 358, quoting *Geiger v. Tower Auto.*, 579 F.3d 614, 620 (6th Cir. 2009).

Where a plaintiff is unable to produce direct evidence of discrimination, the court

must follow the burden-shifting framework articulated by the Supreme Court of the United States in *McDonnell Douglas Corp. v. Green*. Under *McDonnell Douglas*, once the plaintiff succeeds in making a prima facie case of discrimination, the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the termination. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). If the defendant meets its burden, then the burden shifts back to the plaintiff to demonstrate that the defendant's proffered reason is a pretext. *Id*.

**Prima Facie Case**

To establish a prima facie case of discrimination based on disparate treatment, a plaintiff must show that (1) she is disabled; (2) she is otherwise qualified for the job, with or without reasonable accommodation; (3) she suffered an adverse employment action; (4) the employer knew or had reason to know of her disability; and (5) similarly situated non-disabled employees were treated more favorably. *Hopkins v. Electronic Data Systems Corp.*, 196 F.3d 655, 660 (6th Cir. 1999).

To establish a prima facie case of disability discrimination under the ADA for failure to accommodate, a plaintiff must show that (1) she is disabled within the meaning of the Act; (2) she is otherwise qualified for the position, with or without reasonable accommodation; (3) her employer knew or had reason to know about her disability; (4) she requested an accommodation; and (5) the employer failed to provide the necessary accommodation." *Melange v. City of Center Line* 482 F.App'x. 81, 84 (6th Cir. 2012), citing *Johnson v. Cleveland City Sch. Dist.*, 443 F.App'x. 974, 982–83 (6th Cir. 2011).

> On a motion for summary judgment, a district court considers whether there is sufficient evidence to create a genuine dispute at each stage of the *McDonnell*

*Douglas* inquiry. The court first determines if a plaintiff has put forth sufficient **evidence** for a reasonable jury to find her to have met the prima facie requirements, including whether she has met the legitimate expectations of her employer. It performs the same function with respect to defendant's production of evidence, and again for the plaintiff's response to that production." (Emphasis added). *Cline v Catholic Diocese of Toledo*, 206 F.3d 651, 661 (6th Cir. 2000).

Hoffman does not offer direct evidence of disability discrimination by Defendant; but contends that she can establish a prima facie case. Defendant argues that Hoffman cannot satisfy the last element of her prima facie case that any similarly situated, non-disabled employees were treated more favorably, or that Defendant denied her a reasonable accommodation.

The burden at the prima facie stage is not an onerous one, and it is easily met. *Provenzano v. LCI Holdings, Inc.*, 663 F.3d 806, 813 (6th Cir. 2011). The prima facie phase "merely serves to raise a rebuttable presumption of discrimination by eliminating the most common nondiscriminatory reasons" for an employee's termination. *Cline*, 206 F. 3d at 660. It bears repeating, however, that a plaintiff's prima facie burden is slight, but it remains an evidentiary burden. *Id*. at 661.

In her Brief in Opposition, Hoffman, for the first time, suggests that she may meet the fifth element of her prima facie case by showing that Defendant sought or replaced her with other non-disabled applicants for her position. (ECF DKT #47 at 17, citing *Whitfield v. Tennessee*, 639 F.3d 253, 259 (6th Cir. 2011)). However, the Court notes that the Complaint only contains the allegations that Hoffman was terminated, in substantial part, because of her physical disability and that her peers, who did not suffer with disabilities, were not terminated for the same alleged misconduct. (Complaint at ¶110). Hoffman's belated assertion that she

was replaced by someone outside the protected class is not permissible. A plaintiff may not raise a new legal claim for the first time in response to the opposing party's summary judgment motion. See *Tucker v. Union Needletrades, Industrial and Textile Employees*, 407 F.3d 786, 788 (6th Cir. 2005).

**Failure to Accommodate Claims**

The Court agrees with Defendant's observation that Hoffman's Opposition Brief does not counter Defendant's arguments that there was no failure to accommodate. In the Complaint and in her recitation of facts, Hoffman sets out her position that permanent placement in the Juvenile Justice Unit was a reasonably requested accommodation which the O'Malley regime was not willing to grant. However, in the Law and Argument section of the Brief in Opposition (ECF DKT #47), Hoffman concentrates solely on the disparate treatment theory of discrimination. As the Sixth Circuit instructs, "[i]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.." See *Barany-Snyder v. Weiner*, 539 F.3d 327, 331 (6th Cir. 2008) (citation and internal quotation marks omitted). Hoffman put forward no developed argument on the issue of reasonable accommodation.

Thus, the Court need not consider Hoffman's ADA and Ohio Failure to Accommodate claims and Defendant is entitled to judgment in its favor on that aspect of the Complaint.

**Disability Discrimination Claims**

Defendant does not genuinely dispute that Hoffman is disabled; or that she is otherwise qualified for the job, with or without reasonable accommodation; or that she suffered an adverse employment action; or that Defendant knew or had reason to know of her

disability.

Defendant does insist that the disparate treatment prong of Hoffman's prima facie case utterly fails. Hoffman does not provide nor point to any evidence to support a finding that her comparators in the Juvenile Unit of the Prosecutor's Office are not disabled.

Hoffman contends that at least fourteen other Assistant Prosecutors who were assigned to the allegedly mishandled juvenile sex cases - even aside from co-Plaintiff Herman and her former supervisor Belcher - handled these cases no more competently or professionally than she, yet were permitted to keep their jobs. (ECF DKT #47 at 19).

Specifically, Hoffman discusses the similarities between herself and Assistant Prosecuting Attorneys Kristen Hatcher and Chad Cleveland, but points out that they were permitted to keep their jobs. (ECF DKT #47 at 30). All three were similarly experienced. Hoffman was hired in 2014; Hatcher was hired in December of 2015; and Cleveland was hired in April of 2016. They all reported to Robin Belcher in the Juvenile Unit. They all were accused of neglecting sex abuse cases. (Hoffman - three cases; Hatcher - five cases; Cleveland - two cases). Hatcher and Cleveland delayed working on cases substantially longer than Hoffman did; yet only Hoffman's conduct warranted termination.

Missing from Hoffman's recitation is any mention that Hatcher, Cleveland or any others who retained their positions in the Juvenile Unit were not disabled. Nor does Hoffman provide probative evidence that any asserted comparator who was treated more favorably is outside her protected class. This is a necessary element of Hoffman's prima facie case for disability discrimination due to disparate treatment. The Court must reiterate that while Hoffman's burden at the prima facie stage is not onerous, she still must prove the necessary

elements by a preponderance of the evidence. *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981). While the docket for this case contains a multitude of deposition transcripts, ranging from thirty to eight hundred pages in length, the Court is not obliged to seek relevant evidence either to support or defeat a summary judgment motion. *Betkerur, supra.*

Hoffman has failed to meet her burden of establishing a prima facie case of disability discrimination and is unable to raise a rebuttable presumption of discrimination based upon disparate treatment. Therefore, the burden outlined by *McDonnell Douglas* never shifts to Defendant.

### III. CONCLUSION

For these reasons, the Motion (ECF DKT #42) of Defendant Cuyahoga County for Summary Judgment as to Plaintiff Laura Hoffman's Claims is granted.

**IT IS SO ORDERED.**

**DATE: March 31, 2020**

 s/Christopher A. Boyko
 **CHRISTOPHER A. BOYKO**
 **Senior United States District Judge**