**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **LAURA HOFFMAN, et al.,** | ) | **CASE NO. 1:18CV309** |
| | ) | |
| **Plaintiffs,** | ) | **JUDGE CHRISTOPHER A. BOYKO** |
| | ) | |
| **vs.** | ) | **OPINION AND ORDER** |
| | ) | |
| **MICHAEL C. O'MALLEY, et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

**CHRISTOPHER A. BOYKO, J.**:

This matter comes before the Court upon the Motion (ECF DKT #41) of Defendants,

Michael C. O'Malley, Gregory Mussman, Joanna Whinery, Jennifer Driscoll and Cuyahoga

County, for Summary Judgment on Plaintiffs' Defamation and False Light Claims.  For the

following reasons, the Motion is granted.

**I. FACTUAL BACKGROUND**

Defendant Michael C. O'Malley took office as Cuyahoga County Prosecutor on

January 2, 2017.  O'Malley installed Defendant Gregory Mussman as Chief of the Juvenile

Justice Unit and Defendant Joanna Whinery as Managing Attorney in that Unit.

Within a few short weeks, a representative of the Cleveland Rape Crisis Center

contacted the Prosecutor's Office with concerns about a number of sexual assault cases involving juvenile victims which had been reported but never charged.  Mussman, Whinery, Defendant Lisa Williamson and Defendant Jennifer Driscoll began an investigation focusing on the Juvenile Division's intake of sexual assault cases.

The investigation revealed that nearly two thousand cases had been placed on the "inactive" list in the computerized case management system.  In addition, the investigation uncovered seventy-six sexual assault cases that were never fully reviewed for charges. Plaintiff Laura Hoffman handled three of the uncharged cases and Plaintiff Linda Herman was responsible for four of them.

In the wake of the investigation, several Assistant Prosecuting Attorneys were disciplined with demotions, suspensions and verbal reprimands.  Robin Belcher, the previous Managing Attorney of the Intake Unit, resigned.  Herman was offered the option of resigning or being terminated.  She chose to resign her employment on February 8, 2017.  Hoffman was similarly offered the choice of resigning or being terminated.  She resigned her employment with the Cuyahoga County Prosecutor's Office on February 8, 2017.  Plaintiff Hoffman has a genetic condition that severely impairs her vision and which requires accommodation in the workplace.  Plaintiff Herman was approximately 20 years older than her colleagues and was 52 years old at the time of her termination.

As part of the O'Malley administration's investigation, Whinery sent out emails to the Juvenile Court Prosecutors inquiring about uncharged sexual assault cases.  On January 18, 2017, Whinery sent an email stating:  "IF YOU HAVE NOT ALREADY DONE SO, I NEED AN ACCOUNTING FROM EVERYONE AS TO ANY SEX CASES THAT YOU HAVE

THAT HAVE NOT BEEN CHARGED - ASAP."  In addition, Mussman and Whinery instructed support staff to go to each Assistant Prosecuting Attorney's office and search for uncharged cases that were not entered in the Juvenile Court's docketing system known as "Justice Matters."

On January 24, 2017, Mussman called a meeting of the Juvenile Court Unit and announced that an unacceptable number of sexual assault cases were sitting uncharged.

Hoffman checked her office and found two sexual assault files from 2014 which she had designated as inactive after consultation with then-intake supervisor, Belcher.  Hoffman notified Whinery as soon as she realized that these two cases remained assigned to her despite the inactive designation.

In early February 2017, Defendants Williamson, Whinery and Mussman began conducting interviews with seven employees of the Juvenile Justice Unit:  Ralph Kolasinski, Herman, Hoffman, Lakesha Johnson, Kristen Hatcher, Joanna Lopez and Chad Cleveland.

On February 1, 2017, Hoffman was called for an interview with Mussman, Williamson and Whinery.  They questioned her about four sexual assault cases, including the two inactive files from 2014.

Following the interview, Hoffman was notified of a pre-disciplinary conference set for February 7, 2017.  At the conference, she was asked to explain her handling of the four uncharged sexual assault cases.

On January 27, 2017, Herman came forward with four files she had in her office.  She did not consider them "uncharged" cases, rather police reports on "cold cases" that had been reviewed as part of the voluntary Sexual Assault Review Team ("SART") program.  She

provided them to Whinery, along with her notes and drafts of non-prosecution letters she prepared for two of the files.

Following the interview, Herman was notified of a pre-disciplinary conference set for February 7, 2017.  At that conference, Herman was asked to explain her handling of the neglected sexual assault cases.

Thereafter, Williamson, Mussman, the chiefs of the criminal division, the HR director and O'Malley met and discussed the findings of the investigation.  The investigating team recommended to O'Malley "possibly not firing them [Herman and Hoffman]" although "it was bad."  (Williamson Deposition, ECF DKT #40-4 at 22-25).   O'Malley decided, nonetheless, that discipline was justified for Neglect of Duty.

On or about February 13, 2017, O'Malley, Whinery, Driscoll and Mussman told a *Cleveland.com* reporter that 76 sexual assault cases, including 37 reported rapes and 32 reports of gross sexual imposition "sat dormant on the desks of assistant prosecutors for months and, in some cases, years."  (Defendants' Joint Answer, ECF DKT #4, Exhibit A). Plaintiffs were identified as two of the three attorneys in the office who "handled the bulk of the cases" and who were asked to resign or be terminated following a disciplinary hearing. (*Id*.).

The prior Chief of the Juvenile Division was Duane Deskins, who was subsequently appointed to the newly-created position of Chief of Prevention, Intervention and Opportunity for Youth and Young Adults for the City of Cleveland.  He told *Cleveland.com* that "he was not aware of any delays or mishandling of cases while he headed the juvenile division" and that "we did an aggressive job."  (*Id*.).

-4-

O'Malley said the "decision to go public with revelations" was not about the prior administration but it was about "results," and "the results for the public have been a failure in this particular case."  (*Id*.).

Other media sources responsible for the publication of this story were *The Plain Dealer*, *The Morning Journal*, Fox 8 Cleveland, News Channel 5 Cleveland and WCPN Ideastream.  (See Defendants' Joint Answer, ECF DKT #4, Exhibits A-E).

On February 8, 2018, Plaintiffs brought this action for damages against Cuyahoga County and O'Malley, Williamson, Mussman, Whinery and Driscoll, in their official and personal capacities, for defamation, discrimination and wrongful termination of employment in violation of the Americans with Disabilities Act of 1990 ("ADA"), the Age Discrimination in Employment Act ("ADEA") and Ohio Revised Code Sections 4112.02(A) and 4112.14. In previous Opinions and Orders, the Court dismissed Plaintiffs' official capacity claims and claims  against Williamson and granted summary judgment in favor of Defendant Cuyahoga County on Plaintiffs' federal and state discrimination and wrongful termination claims.

**Plaintiffs' Pending Claims**

According to Plaintiffs, O'Malley, Mussman, Whinery and Driscoll made, contributed to and/or caused the publication of the following statements:

**The Plain Dealer/Cleveland.com - Cory Shaffer  - February 13, 2017**

-Three prosecutors were forced to resign last week after a team of lawyers found more than 70 rape and sexual assault cases dating back to 2014.  The prosecutors failed to track the cases, and no charges were filed, O'Malley said.

-Some cases included victims as young as 3 years old, suspects who had already confessed their crimes and suspects who later went on to commit more crimes, O'Malley and assistant prosecutors Joanna Whinery, Jennifer Driscoll and Gregory Mussman said Monday in an interview.

- "It's horrific," O'Malley said.

-"This has nothing to do with the previous administration, other than the fact that you have a Juvenile Chief who apparently failed in his duties as well as somebody who was in charge of that intake unit who failed in their duties," O'Malley said.

-A victim advocate at the rape crisis center also asked Whinery for an update on approximately 15 cases.  Victims had become concerned that their cases had "fallen through the cracks," Whinery said.

- When Whinery, Driscoll and Mussman started looking into the cases, they found the assistant prosecutors never fully reviewed them for charges, the lawyers said.

- On prosecutors' desks, they found years-old police reports that had never been entered into the office database that tracks cases.  Other cases, Mussman said, were entered into the database but sat for 18 months with no follow-up.

-6-

- "Police reports and files had been submitted to the office, but there was no charging being done," O'Malley said.

- But O'Malley cautioned that the 76 sexual assault cases may be just a fraction of the cases that were delayed or brushed off.  The office uses computer software that will send periodic alerts to remind assistant prosecutors if their cases are still active.  The software allows prosecutors to change each case from "active" to "inactive," meaning the alerts would stop popping up, O'Malley said.

- Driscoll started looking into the cases that had been moved to "inactive" status, and found that, while many were duplicate files, others involved rape, aggravated robbery and felonious assault reports that should have been fully investigated.  Some of the reasons prosecutors gave for moving the cases to inactive included that the victim or the victim's parents didn't answer a phone call, Driscoll said.

- "It pretty much amounted to a do-nothing list," O'Malley said.

- O'Malley last week asked three assistant prosecutors who handled the bulk of the delayed cases to resign.

-Laura Hoffman, Linda Herman and Robin Belcher resigned Wednesday, Thursday and Friday, respectively, after each had a disciplinary hearing in O'Malley's office.

-7-

-Records cite incompetency, inefficiency and neglect of duty as reasons for the reprimands.  O'Malley said his office is still investigating the scope of the problem and he could discipline more employees in the future.

- "We will never have a situation where we're talking about any case and any victim where this office failed them," O'Malley said.

- O'Malley said his office's decision to go public with revelations had nothing to do with making McGinty or Deskins look bad.  "This isn't about personalities. This is about results," O'Malley said.  "And the results for the public have been a failure in this particular case."

**News Channel 5 - February 14, 2017**

- "incomprehensible" "complete breakdown within this unit"

-2,000 cases back from 2013- on incorrectly marked "inactive"

- "It wasn't an accident" "not a computer system that went amuck and did this" "individuals did this" - O'Malley

- seven individuals receiving discipline; three no longer work there

**The Morning Journal - February 14, 2017**

- "Three assistant county prosecutors have been forced to resign and four others have

been disciplined.  O'Malley said he plans to refer prosecutors' names to the Ohio

Supreme Court's disciplinary counsel."

- O'Malley says, "outrageous"; "conscious decision to make cases inactive"

**Fox 8 Cleveland - February 14, 2017**

-"A complete failure to the victims of these horrific crimes"; "complete failure of their

obligations" - O'Malley

**WCPN Ideastream - March 7, 2017**

- "All cases need to be resolved one way or another.  And placing them on such a

thing as an inactive list, where it ends up that employees just do nothing with the case,

is never an acceptable resolution." - O'Malley

On September 9, 2019, Defendants filed the instant Motion for Summary Judgment

(ECF DKT #41) on Plaintiffs' remaining claims for Defamation Per Se and False Light

(Invasion of Privacy).  Defendants argue that Plaintiffs cannot prove that the challenged

statements are false nor can Plaintiffs prove actual malice by clear and convincing evidence.

Defendants also assert that the majority of the statements are protected opinion.  Further,

Defendants argue that they enjoy the protections of privilege and immunity.  Moreover, if the

Defamation claim fails, so does Plaintiffs' False Light claim.

In opposition, Plaintiffs insist that there is sufficient evidence for a reasonable jury to

conclude that it was false and defamatory for Defendants to publicly convey that Hoffman

and Herman mishandled the "bulk of" seventy-six uncharged cases or any of the cases at

issue, that Hoffman and Herman were responsible for a multitude of cases on a "do-nothing

list" and that Hoffman and Herman were incompetent, inefficient and derelict in their duties. A jury could also find actual malice because Defendants misrepresented prosecutorial discretion as misconduct, made Hoffman and Herman scapegoats in an effort to disparage Defendants' political opponents and refused to correct the record as to Plaintiffs' lack of responsibility for neglected sexual assault cases in the Juvenile Unit.

## II. LAW AND ANALYSIS

### Standard of Review

### Fed.R.Civ.P 56 Motion for Summary Judgment

Summary judgment shall be granted only if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *See* Fed.R.Civ.P. 56(a). The burden is on the moving party to conclusively show no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Lansing Dairy. Inc. v. Espy*, 39 F.3d 1339, 1347 (6th Cir. 1994). The moving party must either point to "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations, admissions, interrogatory answers, or other materials" or show "that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." *See* Fed.R.Civ.P. 56(c)(1)(A), (B). A court considering a motion for summary judgment must view the facts and all inferences in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Once the movant presents evidence to meet its burden, the nonmoving party may not rest on its pleadings, but must come forward with some significant

probative evidence to support its claim. *Celotex*, 477 U.S. at 324; *Lansing Dairy*, 39 F.3d at 1347.

This Court does not have the responsibility to search the record *sua sponte* for genuine issues of material fact. *Betkerur v. Aultman Hospital Ass 'n.*, 78 F.3d 1079, 1087 (6th Cir. 1996); *Guarino v. Brookfield Township Trustees*, 980 F.2d 399, 404-06 (6th Cir. 1992). The burden falls upon the nonmoving party to "designate specific facts or evidence in dispute," *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 249-50 (1986); and if the nonmoving party fails to make the necessary showing on an element upon which it has the burden of proof, the moving party is entitled to summary judgment. *Celotex*, 477 U.S. at 323. Whether summary judgment is appropriate depends upon "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Amway Distributors Benefits Ass 'n v. Northfield Ins. Co.*, 323 F.3d 386, 390 (6th Cir. 2003) (quoting *Anderson*, 477 U.S. at 251-52).

**Defamation**

"To establish defamation, the plaintiff must show (1) that a false statement of fact was made, (2) that the statement was defamatory, (3) that the statement was published, (4) that the plaintiff suffered injury as a proximate result of the publication, and (5) that the defendant acted with the requisite degree of fault in publishing the statement." *Anthony List v. Driehaus,* 779 F.3d 628, 632–33 (6th Cir. 2015). "Failure to establish any one element is fatal to a defamation claim." *Boulger v. Woods*, 917 F.3d 471, 478 (6th Cir. 2019), citing *Driehaus*, 779 F.3d at 632-33.

In Ohio, words are defamatory when the "statements reflect upon a person's character

-11-

in a manner that will cause him to be ridiculed, hated, or held in contempt, or in a manner that will injure him in his trade or profession." *Earp v. Kent State Univ.,* 2010–Ohio–5904, ¶12 (Ohio Ct.Cl. 2010) (citing *Matikas v. Univ. of Dayton,* 152 Ohio App.3d 514 (2003)); *Kendel v. Local 17-A United Food & Commercial Workers*, 835 F. Supp.2d 421, 435 (N.D. Ohio 2011).

"Defamation falls into two categories, defamation *per quod* or *per se.*  In defamation *per quod,* a publication is merely capable of being interpreted as defamatory and the plaintiff must allege and prove damages.  Defamation *per se* occurs if a statement, on its face, is defamatory.  Additionally, [w]hen a statement is defamatory *per se,* a plaintiff 'may maintain an action for [defamation] and recover damages, without pleading or proving special damages.  Damages are presumed.'"  *Kendel*, 835 F.Supp.2d at 433 (internal citations omitted).

"[I]t is for the court to decide as a matter of law whether certain statements alleged to be defamatory are actionable or not."  *Yeager v. Local Union 20, Teamsters, Chauffeurs, Warehousemen & Helpers of Am.,* 6 Ohio St.3d 369, 372 (1983).  "A defamatory statement expressed in a writing, a picture, a sign, or an electronic broadcast is considered libel."  *McPeek v. Leetonia Italian Am. Club*, 174 Ohio App.3d 380, 384 (2007).

Article 1, Section 11 of the Ohio Constitution guarantees every citizen the right to publish freely his or her sentiments on all subjects.  *Wampler v. Higgins*, 93 Ohio St.3d 111 (2001).  The Ohio Constitution provides an absolute privilege for expressions of opinion and requires the trial court to make a categorical determination in every defamation case as to whether an allegedly defamatory statement is a non-actionable statement of opinion or a

-12-

statement of fact.  *Id.* at 119; *see also Vail v. Plain Dealer Publishing Co.*, 72 Ohio St.3d 279, 281 (1995); *Scott v. News-Herald*, 25 Ohio St.3d 243, 250 (1986).

When analyzing whether a statement is fact or opinion, the Court applies the totality-of-circumstances test.  This test requires the Court to consider the following factors:  1) the specific language used; 2) whether the statement is verifiable; 3) the general context of the statement; and 4) the broader context in which the statement appears.  *Vail*, 72 Ohio St. 3d at 282 (citing *Scott*, 25 Ohio St.3d at 250); *Ferreri v. Plain Dealer Publishing Co.*, 142 Ohio App.3d. 629 (2001).  "The specific language used must be reviewed, focusing on the common meaning ascribed to the words by an ordinary reader.  [The Court] must determine whether a reasonable reader would view the words used to be language that normally conveys information of a factual nature or hype and opinion..."  *Vail*, 72 Ohio St. 3d at 282.  "Furthermore, even if the Court were to consider the language used as conveying to the ordinary reader some implication of criminal conduct courts must 'examine the totality of the circumstances in order to determine whether a published statement constitutes an opinion protected by the Ohio Constitution.'"  *Santoli v. Vill. of Walton Hills*, No. 1:12CV1022, 2014 WL 1093093, at *7 (N.D. Ohio Mar. 18, 2014) quoting *Wampler*, 93 Ohio St.3d at 122.

As the United States Supreme Court stated in *Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 18–19, 110 S. Ct. 2695, 2705–06, 111 L. Ed.2d 1 (1990):

> If a speaker says, "In my opinion John Jones is a liar," he implies a knowledge of  facts which lead to the conclusion that Jones told an untruth. Even if the speaker states the facts  upon which he bases his opinion, if those facts are either incorrect or incomplete, or if his assessment of them is erroneous, the statement may still imply a false assertion of fact.
> Citing *Restatement (Second) of Torts*, § 566.

-13-

**"Of and Concerning"**

Plaintiffs, along with Robin Belcher, were identified by name in the February 13, 2017 *Cleveland.com/Plain Dealer* article as the assistant prosecutors who "handled the bulk of the delayed cases" and who were asked to resign by O'Malley "after each had a disciplinary hearing." The related news stories, published in the following days, stated that out of seven assistant prosecutors that were disciplined, three were terminated. The intended audience could reasonably conclude that Defendants' statements refer to Plaintiffs.

**Protected Opinion or Actionable Statement of Fact**

Applying the totality-of-circumstances analysis, the Court first looks to the specific language used and considers the common meaning to the ordinary reader or viewer. The Court endeavors to "determine whether the allegedly defamatory statement has a precise meaning and thus is likely to give rise to clear factual implications." *Wampler*, 93 Ohio St.3d at 127-28. "Typical examples of actionable language include accusations of punishable criminal or disciplinary conduct." *Vail*, 72 Ohio St.3d at 282.

The specific language used in reference to three prosecutors, two of them being Plaintiffs, includes: "handled the bulk of the delayed cases;" "incompetency;" "inefficiency;" "neglect of duty;" "failure;" "individuals did this;" "fallen through the cracks;" "sat for 18 months with no follow-up;" and "plans to refer prosecutors' names to Ohio Supreme Court's disciplinary counsel." The Court finds that these words have precise meanings, suggest employee conduct or discipline and are actionable statements of fact rather than opinions.

Whether the language is verifiable is a more challenging inquiry. Whether an attorney's actions demonstrate incompetence, inefficiency, failure or neglect is not within the

-14-

everyday understanding of non-lawyers in the audience.  However, saying that this was the doing of individuals and not computer error, and that prosecutors' names may be referred to the state disciplinary body are verifiable matters.  The audience can also comprehend the accusation that the fired prosecutors handled the bulk of seventy-six delayed cases.  There need not be a precise number mentioned to find actionable statements.

The Court must consider the words used in their general context and not in isolation.  As a whole, the language of the articles and news stories is not sarcastic in tone, not exaggerated and not humorous.  The audience can rationally construe the statements as straight-forward reporting of an interview with the newly-installed County Prosecutor and his team.

Furthermore, in the broader context, the challenged articles are found in local newspapers of general circulation and are stories aired on Cleveland television stations.  They are not presented as editorials or commentaries which would more likely fall in the category of protected opinion.

**Truth or Falsity**

Plaintiffs assert that Defendants' statements holding them responsible for mishandling the *bulk of* neglected juvenile sexual assault cases were false.  Plaintiffs point to evidence that they received only positive performance reviews, and that as junior attorneys in the unit, they reasonably followed their supervisor's orders for the handling of files.  (*See, e.g.*, Belcher Deposition, ECF DKT #40-11, ID#2379 & ID# 2384).  Further, it is undisputed that Hoffman and Herman can only be associated with seven of the seventy-six uncharged files.  (O'Malley Deposition, ECF DKT #40-7, ID# 2036:21-2037:3).  Plaintiffs ask the Court to find that the

language surrounding the defamatory remarks in the articles and in the television reports suggest to the reasonable audience that Plaintiffs were neglectful, inefficient, incompetent and perhaps unethical in their handling of a large number of juvenile cases.

Defendants counter that although Plaintiffs complain about several statements, they focus on the line in the *Cleveland.com* article:  "O'Malley last week asked three assistant prosecutors who handled the bulk of the delayed cases to resign."  Defendants insist that it is true as written.  Indisputably, the sentence references three, not two, assistant prosecutors – Plaintiffs who were responsible for seven files and their supervisor, Robin Belcher, who was responsible for most of the sexual assault cases brought into the Juvenile Unit.  (Belcher Deposition, ECF DKT #41-11, ID# 5035-36).

Moreover, Defendants point out that the "bulk of" statement was not made by them but was the wording chosen by the reporter, Cory Shaffer.  In his Amended Declaration (ECF DKT #41-15) which supersedes his earlier declaration, Shaffer specifically says at ¶ 7:  "I reported in the February 13, 2017 report that Laura Hoffman and Linda Herman were two of the three prosecutors "who handled the bulk of the delayed cases," because that is the gist of what Mr. O'Malley and the other members of the Office told me at the meeting referenced above."  Thus, Shaffer wrote the substance of what was communicated to him at the interview and did not attribute the term "bulk of" to any particular Defendant.

Plaintiffs do not deny that they failed to act on the seven cases assigned to them.  They contend, however, that they complied with office policy and followed Belcher's instructions as to designating matters "inactive" and waiting for sufficient information from witnesses before proceeding to issue charges.  (Hoffman Deposition, ECF DKT #41-2, pp. 118-119,

125-126; Herman Deposition, ECF DKT #41-3, pp. 112-113).  Therefore, Defendants insist that everything in the challenged news reports was true or substantially true.

Ohio courts "ha[ve] defined a false statement as a statement that sets forth matters which are not true or statements without grounds in truth or fact.  A statement is not a 'false statement' if, even though it is misleading and fails to disclose all relevant facts, the statement has some truth in it.  Moreover, a statement that is subject to different interpretations is not 'false.'"  *Serv. Emp. Int'l Union Dist. 1199 v. Ohio Elections Comm'n*, 158 Ohio App.3d 769, 822 N.E.2d 424, 430 (2004); *see also Nat'l Medic Serv. Corp. v. E.W. Scripps Co.*, 61 Ohio App.3d 752, 573 N.E.2d 1148, 1150 (1989).  Whether or not a defamatory statement is substantially true is a question of fact.  *Young v. Gannett Satellite Information Network, Inc*., 837 F.Supp.2d 758, 764 (S.D. Ohio 2011).

Thus, even assuming Plaintiffs have provided enough evidence to support a finding of falsity, Plaintiffs must now satisfy the onerous burden that Defendants made the false statements with the requisite degree of fault.

**Actual Malice**

Defendants posit that Plaintiffs, as prosecuting attorneys, are public officials who must prove actual malice to recover for defamation.  *See Phillips v Ingham Cty.*, 371 F.Supp.2d 918, 929-931 (W.D.Mich. 2005).

Additionally, Defendants maintain that their statements are protected by qualified privilege in the discharge of a public duty.  As an example, Defendants suggest that public statements about the termination of employees are protected.  *See Wrenn v. Ohio Dept. of Mental Health & Mental Retardation*, 16 Ohio App.3d 160, 163 (10th Dist. 1984).  Said

-17-

qualified privilege does not apply if a defendant makes a defamatory statement with actual malice.

In their Opposition Brief, Plaintiffs do not dispute that it is necessary to prove actual malice to overcome qualified privilege, and they concede that the Court need not  undertake the public figure analysis.  (ECF DKT #46, p. 23).  Nonetheless, Plaintiffs are confident that they have exceeded their evidentiary burden allowing a reasonable jury to find actual malice. (*Id.*)

Plaintiffs must prove actual malice by clear and convincing evidence.  *McKimm v. Ohio Elections Comm'n*, 89 Ohio St.3d 139, 147 (2000).  Whether the evidence in the record is sufficient to support a finding of actual malice is a question of law for the court.  (*Id.*) (citing *Harte–Hanks Communications, Inc. v. Connaughton*, 491 U.S. 657, 685 (1989)).

In order to establish actual malice, Plaintiffs must prove that Defendants made the statements with knowledge that they were false or with reckless disregard for whether they were false or not.  *Dupler v. Mansfield Journal Co.*, 64 Ohio St.2d 116, 119 (1980).

> Actual malice may not be inferred from evidence of personal spite[,] ill-will[,] or intention to injure on the part of the [defendant].  Rather, the focus of inquiry is on [the] defendant's attitude toward the truth or falsity of the publication.... There must be a showing that false statements were made with a high degree of awareness of their probable falsity ... [and] sufficient evidence to permit the conclusion that the defendant in fact entertained serious doubts as to the truth of his publication."  *Id.* at 119 (quotation marks and citations omitted).

Defendants argue that the evidence put forward by Plaintiffs is not clear and convincing and does not prove actual malice.

First, Plaintiffs assert that Defendants intended to smear their opponents in the previous administration and to make Hoffman and Herman scapegoats in the effort to

-18-

disparage Defendants' political adversaries.  In support of this contention, Plaintiffs direct the Court to an email exchange between members of *Cleveland.com* staff, suggesting the motivation behind the Juvenile Unit story was retribution against Duane Deskins.  (ECF DKT #40-6, Exhibit 2, ID# 1906).

This email is not authenticated by the parties to it and therefore, cannot stand for the truth of the matter.  Moreover, in the *Cleveland.com* article of February 13, 2017, O'Malley disputes the idea of a campaign against his predecessor.  ("O'Malley said his office's decision to go public with revelations had nothing to do with making McGinty or Deskins look bad. "This isn't about personalities. This is about results," O'Malley said.")   In addition, O'Malley denies the political motive under oath.  (O'Malley Deposition, ECF DKT #40-7, ID# 2076-77).

Even if Plaintiffs' idea of  "scapegoating" them as part of a "smear campaign"  were established, actual malice is not proven.  "Actual malice may not be inferred from evidence of personal spite, ill-will or intention to injure."  *Dupler*, 64 Ohio St.2d at 119.

Next, Plaintiffs point to Defendants' misrepresentation of  prosecutorial discretion as misconduct; Defendants' knowledge that Plaintiffs were not responsible for the "bulk of" neglected cases; and Defendants' knowledge that Plaintiffs only reasonably followed orders in handling their files.

The evidence shows, however, that Plaintiffs admittedly did allow seven juvenile sexual assault cases to sit inactive for a significant amount of time.  O'Malley never was quoted as using the term "bulk of."  O'Malley never identified Plaintiffs by name.  (O'Malley Deposition, ECF DKT #40-7, ID# 2047).  Rather, Shaffer learned the names to use in the

-19-

story by requesting employment records.  (Shaffer Amended Declaration, ECF DKT #41-15, ¶ 8).  As far as following the supervisor's orders, O'Malley determined after investigation and interviews that Plaintiffs **and** their supervisor neglected their duties as prosecutors and that the system as a whole "failed" the public.

Lastly, Plaintiffs insist that it is probative of actual malice that Defendants refused to correct the record.  Shaffer contacted Defendants, after his *Cleveland.com* article ran, and asked for clarification of the number of cases Hoffman and Herman were responsible for mishandling or neglecting.  After nearly a month without response, Shaffer heard from O'Malley's office:  "It is Prosecutor O'Malley's belief that neglecting even one sexual assault case is unacceptable.  Our office policy is not to discuss personnel issues in the media." (Shaffer Amended Declaration, ECF DKT #41-15, ¶ 11, Exhibit E).

Besides the fact that this evidence shows that O'Malley believed his statements were substantially true, the refusal to issue a retraction is irrelevant and a "red herring."  The Court's focus for an actual malice analysis is what a defendant knew at the time the statement was published.  The appropriate inquiry is whether at the time the statements were made, Defendants either made them "with a high degree of awareness of their probable falsity" or while entertaining "serious doubts as to the truth of [their] publication."  Failure to correct the statements later, or following some further investigation, is not a correct measure of actual malice in the defamation context.

 The Court must "consider the evidence and all reasonable inferences to be drawn therefrom in the light most favorable to the plaintiff to determine whether a reasonable jury could find actual malice with convincing clarity."  *Jackson v. Columbus*, 117 Ohio St.3d 328,

883 N.E.2d 1060, 1064 (2008).  Upon consideration of the record before it on this issue, and

mindful that the standard to be met is clear and convincing evidence, the Court holds that the

evidence is insufficient to support a finding that Defendants acted with actual malice.

Plaintiffs' failure to meet the actual malice element is fatal to their Defamation claim against

Defendants.

**False Light (Invasion of Privacy)**

        To assert a claim for false light "[i]n Ohio, one who gives publicity to a matter

concerning another that places the other before the public in a false light is subject to liability

to the other for invasion of his privacy if (a) the false light in which the other was placed

would be highly offensive to a reasonable person, and (b) the actor had knowledge of or acted

in reckless disregard as to the falsity of the publicized matter and the false light in which the

other would be placed."  *Welling v. Weinfeld,* 113 Ohio St.3d 464, 473 (2007).

        The Court has already determined for purposes of Plaintiffs' Defamation claims, that

there is no clear and convincing evidence that Defendants acted with actual malice.  That is,

even after drawing all reasonable inferences in Plaintiffs' favor, there is insufficient evidence

that Defendants had knowledge of the falsity of their published statements or recklessly

disregarded whether the statements were false or not.  This determination defeats Plaintiffs'

False Light claims also.

        The only two categories of False Light claims which extend beyond the borders of

Defamation do not coincide with Plaintiffs' claims.  *See Croce v N.Y. Times*, 345 F.Supp.3d

961, 993-94 (S.D. Ohio 2018).  None of the challenged statements reveal intimate or personal

details about Plaintiffs' lives, and none portray Plaintiffs in a more positive light than they

deserve.  Therefore, on the basis that the Court dismisses Plaintiffs' Defamation claims, their False Light claims also fall.

**Remaining Issues**

Because the Court rules that Plaintiffs' Defamation and False Light claims are defeated for lack of the essential element of actual malice, the Court need not consider Defendants' statutory immunity argument.

Furthermore, since Plaintiffs alleged in their Complaint that the individual Defendants acted in the course and scope of their employment yet failed to establish liability against the individual Defendants, the Vicarious Liability claims against Defendant Cuyahoga County are dismissed.

## III. CONCLUSION

For these reasons, the Motion (ECF DKT #41) of Defendants, Michael C. O'Malley, Gregory Mussman, Joanna Whinery, Jennifer Driscoll and Cuyahoga County, for Summary Judgment on Plaintiffs' Defamation and False Light Claims is granted.  Since no claims remain for adjudication, Plaintiffs' Complaint is dismissed in its entirety.

**IT IS SO ORDERED.**

**DATE: April 20, 2020**

 **s/Christopher A. Boyko**
**CHRISTOPHER A. BOYKO**
**Senior United States District Judge**